# DIXON, SECRETARY OF STATE OF ILLINOIS *v.* LOVE

No. 75–1513.   Argued March 1–2, 1977—Decided May 16, 1977

*Patricia Rosen,* Assistant Attorney General of Illinois, argued the cause for appellant. With her on the briefs were *William J. Scott,* Attorney General, and *Paul J. Bargiel, Stephen R. Swofford,* and *Mary Stafford,* Assistant Attorneys General.

*James O. Latturner* argued the cause for appellee. With him on the brief were *Alan M. Freedman, Richard J. Hess,* and *Allen L. Ray.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

The issue in this case is whether Illinois has provided constitutionally adequate procedures for suspending or revoking the license of a driver who repeatedly has been convicted of traffic offenses. The statute and administrative regulations provide for an initial summary decision based on official records, with a full administrative hearing available only after the suspension or revocation has taken effect.

# I

The case centers on § 6–206 of the Illinois Driver Licensing Law (c. 6 of the Illinois Vehicle Code). The section is entitled "Discretionary authority to suspend or revoke license or permit." It empowers the Secretary of State to act "without preliminary hearing upon a showing by his records or other sufficient evidence" that a driver's conduct falls into any one of 18 enumerated categories. Ill. Rev. Stat., c. 95½, § 6–206 (a) (1975). Pursuant to his rulemaking authority under this law, § 6–211 (a),[1] the Secretary has adopted administrative regulations that further define the bases and procedures for discretionary suspensions. These regulations generally provide for an initial summary determination based on the individual's driving record.[2] The Secretary has established a comprehensive system of assigning "points" for various kinds of traffic offenses, depending on severity, to provide an objective means of evaluating driving records.

One of the statutorily enumerated circumstances justifying

---

[1] Section 6–211 (a): "The Secretary of State shall administer the provisions of this Chapter and may make and enforce rules and regulations relating to its administration."

[2] Rule 6–206 (a) (1975) provides in part:

"The Secretary of State is authorized to exercise discretionary authority to suspend or revoke the license or permit of any person without a preliminary hearing, or to decline to suspend or revoke such driving privileges. In making a determination of the action to be taken, the Secretary of State shall take into consideration the severity of the offense and conviction, the number of offenses and convictions, and prior suspensions or revocations on the abstract of the driver's record. The Secretary may also take into consideration the points accumulated by the driver and noted on his driving record.

"For the purpose of this Rule and its companion rules, a conviction is the final adjudication of 'guilty' by a court of competent jurisdiction, either after a bench trial, trial by jury, plea of guilty, order of forfeiture, or default, as reported to the Secretary of State, and the Secretary of State is not authorized to consider or inquire into the facts and circumstances surrounding the conviction."

108 ■■■■■■

license suspension or revocation is conviction of three moving traffic offenses within a 12-month period. § 6–206 (a)(2).[3] This is one of the instances where the Secretary, by regulation, has provided a method for determining the sanction according to the driver's accumulated "points." [4]

Another circumstance, specified in the statute, supporting suspension or revocation is where a licensee

"[h]as been repeatedly involved as a driver in motor vehicle collisions or has been repeatedly convicted of

[3] The statute authorizes suspension or revocation where a licensee "[h]as been convicted of not less than 3 offenses against traffic regulations governing the movement of vehicles with the exception of those offenses excluded under the provisions of Section 6–204 (2), committed within any 12 month period so as to indicate the disrespect for traffic laws and a disregard for the safety of other persons on the highways; conviction upon 3 charges of violation of Section 11–601 of this Act committed within a period of 12 months shall be deemed grounds for the revocation or suspension of a license or permit under this Section, provided that no such revocation or suspension shall be entered more than 6 months subsequent to the date of conviction of the 3rd offense." Ill. Rev. Stat. c. 95½, § 6–206 (a)(2) (1975).

[4] Rule 6–206 (a)2 (1975) provides:

"A person who has been convicted of three (3) or more offenses against traffic regulations, governing the movement of vehicles, with the exception of those offenses excluded under provisions of Section 6–204 (2) and whose violations have occurred within a twelve (12) month period may be suspended as follows:

| "Number of points | Action |
| --- | --- |
| 20 to 44 | Suspension up to 2 months |
| 45 to 74 | Suspension up to 3 months |
| 75 to 89 | Suspension up to 6 months |
| 90 to 99 | Suspension up to 9 months |
| 100 to 109 | Suspension up to 12 months |
| Over 110 | Revocation for not less than 12 months. |

"A person who has accumulated sufficient points to warrant a second suspension within a 10-year period may be either suspended or revoked,

offenses against laws and ordinances regulating the movement of traffic, to a degree which indicates lack of ability to exercise ordinary and reasonable care in the safe operation of a motor vehicle or disrespect for the traffic laws and the safety of other persons upon the highway." § 6–206 (a)(3).

Here again the Secretary has limited his broad statutory discretion by an administrative regulation. This regulation allows suspension or revocation, where sufficient points have been accumulated to warrant a second suspension within a 5-year period.[5] The regulation concludes flatly: "A person who has been suspended thrice within a 10 year period shall be revoked."

Section 6–206 (c)(1)[6] requires the Secretary "immediately" to provide written notice of a discretionary suspension or revocation under this statute, but no prior hearing is required. Within 20 days of his receiving a written request from the licensee, the Secretary must schedule a full evidentiary hear-

_____

depending on the number of points. In the event of a second suspension in the 10-year period, the length of suspension, determined by the point total, is doubled to arrive at the type and duration of action."

[5] Rule 6–206 (a)3 (1975) provides:

"A person repeatedly involved in collisions or convictions to a degree which indicates the lack of ability to exercise ordinary and reasonable care in the safe operation of a motor vehicle, or whose record indicates disrespect for traffic laws and the safety of other persons on the highway, and who has accumulated sufficient points to warrant a second suspension within a 5 year period, may either be suspended or revoked by the Secretary of State, based upon the number of points in his record. A person who has been suspended thrice within a 10 year period shall be revoked."

[6] Section 6–206 (c)(1): "Upon suspending or revoking the license or permit of any person as authorized in this Section, the Secretary of State shall immediately notify such person in writing of the order revoking or suspending the license or permit. Such notice to be deposited in the United States mail, postage prepaid, to the last known address of such person."

ing for a date "as early as practical" in either Sangamon County or Cook County, as the licensee may specify. § 2–118 (a). The final decision of the Secretary after such hearing is subject to judicial review in the Illinois courts. § 2–118 (e). In addition, a person whose license is suspended or revoked may obtain a restricted permit for commercial use or in case of hardship. §§ 6–206 (c) (2) and (3).[7]

## II

Appellee Love, a resident of Chicago, is employed as a truck-driver. His license was suspended in November 1969, under § 6–206 (a)(2), for three convictions within a 12-month period. He was then convicted of a charge of driving while his license was suspended, and consequently another suspension was imposed in March 1970 pursuant to § 6–303 (b). Appellee received no further citation until August 1974, when he was arrested twice for speeding. He was convicted of both charges and then received a third speeding citation in February 1975. On March 27, he was notified by letter that he would lose his driving privileges if convicted of a third offense. On March 31 appellee was convicted of the third speeding charge.

---

[7] The statutory provision regarding commercial licenses provides that a suspension shall not deny "a person's license to drive a commercial vehicle only as an occupation . . . unless 5 offenses were committed, at least 2 of which occurred while operating a commercial vehicle in connection with his regular occupation." The statute places the burden on the commercial driver whose license is suspended to submit an affidavit to the Secretary within 25 days, setting forth facts establishing his eligibility for relief under this section. A commercial driver may obtain the same relief by requesting an administrative hearing in lieu of submitting an affidavit. In any event, the driver must return his license to the Secretary and in its place is issued a permit to drive only a commercial vehicle in his regular occupation. § 6–206 (c)(2).

Any driver whose license is suspended or revoked, in order to "relieve undue hardship," may apply for a restricted permit to drive between his residence and his place of employment "or within other proper limits." § 6–206 (c)(3).

On June 3, appellee received a notice that his license was revoked effective June 6.[8] The stated authority for the revocation was § 6–206 (a)(3); the explanation, following the language of the statute, was:

"This action has been taken as a result of: Your having been repeatedly convicted of offenses against laws and ordinances regulating the movement of traffic, to a degree which indicates disrespect for the traffic laws." App. 13.

Appellee, then aged 25, made no request for an administrative hearing. Instead, he filed this purported class action[9] on June 5 against the Illinois Secretary of State in the United States District Court for the Northern District of Illinois. His complaint sought a declaratory judgment that § 6–206 (a)(3) was unconstitutional, an injunction against enforcement of the statute, and damages. Appellee's application for a temporary restraining order was granted on condition that he apply for a hardship driving permit. He applied for that permit on June 10, and it was issued on July 25.

A three-judge District Court was convened to consider appellee's claim that the Illinois statute was unconstitutional. On cross-motions for summary judgment, the court held that a license cannot constitutionally be suspended or revoked under § 6–206 (a)(3) until after a hearing is held to determine whether the licensee meets the statutory criteria of "lack of ability to exercise ordinary and reasonable care in the safe operation of a motor vehicle or disrespect for the traffic laws

---

[8] Appellee's March speeding conviction was his third within a 12-month period, and thus § 6–206 (a)(2) authorized suspension of his license. That suspension, however, would have been appellee's third within a 10-year period. The Secretary therefore proceeded directly under Rule 6–206 (a)3, which makes revocation mandatory under such circumstances. The District Court treated this procedure as functionally equivalent to suspension under § 6–206 (a)(2), followed by mandatory revocation under Rule 6–206 (a)3. See App. 20 n. 2.

[9] The class was never certified.

and the safety of other persons upon the highway." The court regarded such a prior hearing as mandated by this Court's decision in *Bell* v. *Burson,* 402 U. S. 535 (1971). Accordingly, the court granted judgment for appellee and enjoined the Secretary of State from enforcing § 6–206 (a)(3). The Secretary appealed, and we noted probable jurisdiction *sub nom. Howlett* v. *Love,* 429 U. S. 813 (1976).

### III

It is clear that the Due Process Clause applies to the deprivation of a driver's license by the State:

"Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Bell* v. *Burson,* 402 U. S., at 539.

It is equally clear that a licensee in Illinois eventually can obtain all the safeguards procedural due process could be thought to require before a discretionary suspension or revocation becomes final. Appellee does not challenge the adequacy of the administrative hearing, noted above, available under § 2–118. The only question is one of timing. This case thus presents an issue similar to that considered only last Term in *Mathews* v. *Eldridge,* 424 U. S. 319, 333 (1976), namely, "the extent to which due process requires an evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing is provided thereafter." We may analyze the present case, too, in terms of the factors considered in *Eldridge:*

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and

probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.,* at 335.

The private interest affected by the decision here is the granted license to operate a motor vehicle. Unlike the social security recipients in *Eldridge,* who at least could obtain retroactive payments if their claims were subsequently sustained, a licensee is not made entirely whole if his suspension or revocation is later vacated. On the other hand, a driver's license may not be so vital and essential as are social insurance payments on which the recipient may depend for his very subsistence. See *Goldberg* v. *Kelly,* 397 U. S. 254, 264 (1970). The Illinois statute includes special provisions for hardship and for holders of commercial licenses, who are those most likely to be affected by the deprival of driving privileges. See n. 7, *supra.* We therefore conclude that the nature of the private interest here is not so great as to require us "to depart from the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mathews* v. *Eldridge,* 424 U. S., at 343. See *Arnett* v. *Kennedy,* 416 U. S. 134 (1974).

Moreover, the risk of an erroneous deprivation in the absence of a prior hearing is not great. Under the Secretary's regulations, suspension and revocation decisions are largely automatic. Of course, there is the possibility of clerical error, but written objection will bring a matter of that kind to the Secretary's attention. In this case appellee had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the Secretary's decision was based. Appellee has not challenged the validity of those convictions or the adequacy of his procedural rights at the time they were determined. Tr. of Oral Arg. 41, 47. Since appel-

lee does not dispute the factual basis for the Secretary's decision, he is really asserting the right to appear in person only to argue that the Secretary should show leniency and depart from his own regulations.[10] Such an appearance might make the licensee feel that he has received more personal attention, but it would not serve to protect any substantive rights. We conclude that requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations.

Finally, the substantial public interest in administrative efficiency would be impeded by the availability of a pretermination hearing in every case. Giving licensees the choice thus automatically to obtain a delay in the effectiveness of a suspension or revocation would encourage drivers routinely to request full administrative hearings. See *Mathews* v. *Eldridge,* 424 U. S., at 347. Far more substantial than the administrative burden, however, is the important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard. See *Perez* v. *Campbell,* 402 U. S. 637, 657, 671 (1971) (opinion concurring in part and dissenting in part). This factor fully distinguishes *Bell* v. *Burson, supra,* where the "only purpose" of the Georgia statute there under consideration was "to obtain security from which to pay any judgments against the licensee resulting from the accident." 402 U. S., at 540.[11] In contrast, the Illinois statute at

---

[10] Appellee also contends that a prior hearing would avoid erroneous deprivation of a license where the commercial driver or hardship exceptions are applicable. See n. 7, *supra.* It is clear, however, that these statutory provisions contemplate relief only after the initial decision to suspend or revoke is made, and the licensee has the burden of demonstrating his eligibility for the relief. An initial suspension or revocation, therefore, is not "erroneous" even if the licensee subsequently qualifies for relief as a commercial driver or hardship case.

[11] Since *Bell* v. *Burson* was decided, courts have sustained suspension or revocation of driving privileges, without prior hearing, where earlier con-

issue in the instant case is designed to keep off the roads those drivers who are unable or unwilling to respect traffic rules and the safety of others.

We conclude that the public interests present under the circumstances of this case are sufficiently visible and weighty for the State to make its summary initial decision effective without a predecision administrative hearing.

The present case is a good illustration of the fact that procedural due process in the administrative setting does not always require application of the judicial model. When a governmental official is given the power to make discretionary decisions under a broad statutory standard, case-by-case decisionmaking may not be the best way to assure fairness. Here the Secretary commendably sought to define the statutory standard narrowly by the use of his rulemaking authority.[12] The decision to use objective rules in this case provides drivers with more precise notice of what conduct will be sanctioned and promotes equality of treatment among similarly situated drivers. The approach taken by the District Court would have the contrary result of reducing the fairness of the system, by requiring a necessarily subjective inquiry in each case as to a driver's "disrespect" or "lack of ability to exercise ordinary and reasonable care."

The second count of appellee's complaint challenged § 6–206 (a)(3) on the grounds of vagueness and inadequacy of standards. The three-judge court did not reach the issue.

---

victions were on the record. See, e. g., Cox v. Hjelle, 207 N. W. 2d 266, 269–270 (N. D. 1973); Stauffer v. Weedlun, 188 Neb. 105, 195 N. W. 2d 218, appeal dismissed, 409 U. S. 972 (1972); Horodner v. Fisher, 38 N. Y. 2d 680, 345 N. E. 2d 571, appeal dismissed, 429 U. S. 802 (1976); Wright v. Malloy, 373 F. Supp. 1011, 1018–1019 (Vt.), summarily aff'd, 419 U. S. 987 (1974); Scott v. Hill, 407 F. Supp. 301, 304 (ED Va. 1076).

[12] See K. Davis, Discretionary Justice, c. III, 52–96 (1969). The promulgation of rules may be of particular value when it is necessary for administrative decisions to be made summarily. See Freedman, Summary Action by Administrative Agencies, 40 U. Chi. L. Rev. 1, 44–49 (1972).

App. 22. We regard the claim, in the light of Love's record, as frivolous.

The judgment of the District Court is reversed.

*It is so ordered.*

MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. JUSTICE STEVENS, with whom MR. JUSTICE MARSHALL joins, concurring.

While I join the opinion of the Court, I believe it is important to point out that the Court has not rejected the constitutional analysis of the District Court. The District Court held that a driver's license may not be revoked on the basis of an *ex parte* determination that certain facts "indicate . . . disrespect for the traffic laws." This Court does not disagree. It merely holds that the District Court erred in its assumption that appellee's license was revoked on the authority of the first sentence of Rule 6–206 (a)3 (1975),[1] which the District Court construed to require such a determination.[2]

---

[1] Rule 6–206 (a)3 provides:

"A person repeatedly involved in collisions or convictions to a degree which indicates the lack of ability to exercise ordinary and reasonable care in the safe operation of a motor vehicle, or whose record indicates disrespect for traffic laws and the safety of other persons on the highway, and who has accumulated sufficient points to warrant a second suspension within a 5 year period, may either be suspended or revoked by the Secretary of State, based upon the number of points in his record. A person who has been suspended thrice within a 10 year period shall be revoked."

[2] The District Court construed Rule 6–206 (a)3 as follows:

"The statute makes suspension or revocation dependent on a determination of whether the driver's repeated involvement in collisions or conviction of offenses indicates lack of ability to use due care or disrespect for the traffic laws and the safety of others. The regulation makes suspension or revocation dependent *both* on such a determination *and* the accumulation of a given number of points, and even then the Secretary 'may' but

The Court interprets the Secretary's action as resting on the second sentence of Rule 6–206 (a)3 which provides that a person's license *must* be revoked if it has been suspended three times in 10 years. Appellee's license had already been suspended twice. A third suspension would have been required under a different rule because appellee had three convictions in one year.[3] Consequently, appellee's license was subject to mandatory revocation, see *ante*, at 111 n. 8, and no prior hearing was necessary.

MR. JUSTICE BRENNAN, concurring in the result.

My Brother STEVENS' concurring opinion makes clear that appellee's license was revoked under a valid regulation making

---

is not required to suspend or revoke the driver's license. Only when a driver has been suspended thrice in a ten-year period is the Secretary's action made mandatory." App. 20.

[3] Rule 6–206 (a)2 (1975) provides in pertinent part:

"A person who has been convicted of three (3) or more offenses against traffic regulations, governing the movement of vehicles, with the exception of those offenses excluded under provisions of Section 6–204 (2) and whose violations have occurred within a twelve (12) month period may be suspended as follows:

| "Number of Points | Action |
| --- | --- |
| 20 to 44 | Suspension up to 2 months |
| 45 to 74 | Suspension up to 3 months |
| 75 to 89 | Suspension up to 6 months |
| 90 to 99 | Suspension up to 9 months |
| 100 to 109 | Suspension up to 12 months |
| Over 110 | Revocation for not less than 12 months." |

This rule can be fairly construed to leave the Secretary substantial discretion concerning only the *length* of the suspension. Moreover, this rule implements Ill. Rev. Stat. c. 95½, § 6–206 (a) (2) (1975), but the complaint does not challenge the constitutionality of that subsection; only § 206 (a) (3) is attacked.

The District Court noted that appellee had previously been "notified by letter that a further conviction would result in loss of his driving privileges." App. 17.

revocation mandatory if his license had been suspended three times within 10 years. Rule 6–206 (a)3 (1975). Appellee's license was properly suspended for a third time within a 10-year period when he was convicted of a speeding violation on March 31, 1976. This suspension, and both earlier suspensions, were based on convictions for traffic offenses which appellee does not contest here. Under these circumstances, the requirement of a prior hearing mandated by *Bell* v. *Burson,* 402 U. S. 535 (1971), is not applicable since, as my Brother STEVENS demonstrates, a hearing was unnecessary to establish what was already clear—that the revocation of appellee's license was mandatory.