**Donald E. MONTRYM, Individually and on behalf of all others similarly situated**

v.

**Robert A. PANORA, Registrar of Motor Vehicles, and his successors in office.**

**No. CA 76-2560-F.**

United States District Court, D. Massachusetts.

Oct. 6, 1977.

Judgment Vacated Oct. 31, 1977. See 98 S.Ct. 386.

---

Levin H. Campbell, Circuit Judge, dissented and filed opinion.

Robert W. Hagopian, Cambridge, Mass., for plaintiff.

Steven A. Rusconi, Asst. Atty. Gen., Boston, Mass., for defendant.

## MEMORANDUM

Before CAMPBELL, Circuit Judge and FREEDMAN and TAURO, District Judges.

TAURO, District Judge.

Defendant Registrar of Motor Vehicles has moved this court to reconsider its denial of his earlier motions to stay or modify the judgment entered against him by this court on May 4, 1977 in accordance with the opinion issued on March 25, 1977, 429 F.Supp. 393. He relies primarily upon the recent Supreme Court case of *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). In that case, the Court upheld the provision of the Illinois Driver Licensing Law which empowers the Secretary of State to suspend or revoke, without a preliminary hearing, a license of a driver who had repeatedly been convicted for traffic offenses.

The plaintiff argues, and this court agrees, that several critical factors distinguish *Love* from this case. The significance of these distinguishing factors becomes apparent when they are analyzed in terms of the three prong test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) which requires consideration of:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335, 96 S.Ct. at 903.

*First,* the private interest here is greater than that at stake in *Love.* There, the Court emphasized that the challenged Illinois statute allowed a person, upon notification of suspension or revocation, to request emergency relief in the form of a restricted permit. Ill.Ann.Stat. c. 95½ §§ 6–206(c)3 and (c)2.[1] The opportunity for such relief was a controlling factor in the Court's decision.

The private interest affected by the decision here is the granted license to operate a motor vehicle. Unlike the social security recipients in *Eldridge,* who at least could obtain retroactive payments if their claims were subsequently sustained, a licensee is not made entirely whole if his suspension or revocation is later vacated. On the other hand, a driver's license may not be so vital and essential as are social insurance payments on which the recipient may depend for his very subsistence. See *Goldberg v. Kelly,*

397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). The Illinois statute includes special provisions for hardship and for holders of commercial licenses, who are those most likely to be affected by the deprival of driving privileges. See n. 7, *supra.* We therefore conclude that the nature of the private interest here is not so great as to require us "to depart from the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mathews v. Eldridge,* 424 U.S., at 343, 96 S.Ct. [893] at 907. See *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

431 U.S. at 113, 97 S.Ct. at 1728.

There is no comparable safeguard in the challenged Massachusetts statute. *See* Mass.Gen.Laws ch. 90, § 24(1)(f). We recognize that there is a statutory provision for a hearing at the time of the license surrender. Mass.Gen.Laws ch. 90, § 24(1)(g). But, as we pointed out in our prior opinion, such hearings are likely to be delayed with the consequence that the license remains suspended for a period of time without there being any available procedure for seeking emergency relief. Opinion 429 F.Supp. at 397, n. 11 and 400.[2]

1. Under the Illinois scheme, a commercial driver whose license has been suspended may submit an affidavit setting forth the facts of his employment and the number of offenses committed while driving a commercial vehicle. Upon receipt of the affidavit and the driver's license, the Secretary shall "thereupon send to said driver a permit to drive a commercial vehicle in his regular occupation." Alternatively, the commercial driver may seek a hearing. Ill.Ann.Stat. c. 95½ § 6–206(c)2. Consequently, the potential for commercial loss is considerably less than in Massachusetts.

The statutory scheme for the granting of hardship permits is somewhat more ambiguous. It is not clear whether the Secretary may consider and grant a limited license to prevent undue hardship prior to the hearing permitted by Ill.Ann.Stat. c. 95½ § 2–118, or only subsequent to such a hearing. § 6–206(c)3. While our dissenting brother believes that the hardship application may be made and considered only subsequent to a hearing, the Court's opinion in *Love,* supra, suggests that the hardship

application may be considered prior to hearing. 431 U.S. 105, 97 S.Ct. 1723.

In view of the issue before the Supreme Court in *Love,* it is logical to conclude that consideration of what occurs after the post evidentiary hearing (under Ill.Ann.Stat. c. 95½ § 2–118) would be irrelevant. Yet the Supreme Court explicitly referred to the special provisions for holders of commercial licenses *and* for hardship cases, as indicated in the passage quoted above in the text, when it enumerated those factors which led the Court to conclude that the nature of the right involved in *Love* did not require an evidentiary hearing prior to license suspension or revocation.

Judge Campbell's references to stipulated facts in footnote 3 and throughout his dissenting opinion are troublesome. Our understanding is that defendant's proposed stipulation of facts was not executed by the plaintiff.

2. In his dissenting opinion Judge Campbell states that . . . "Massachusetts provides for a full hearing commencing, though not necessarily ending, the very same day the license is surrendered." The fact is that hearings are

Unlike the situation in *Love*, Massachusetts provides no opportunity for emergency relief prior to a hearing. Hence the potential for irreparable personal and economic hardship is far greater in Massachusetts than in Illinois.

■ Contrary to the interpretation advanced by the defendant, our prior opinion does not require that the Registrar provide opportunity for a pre-suspension evidentiary hearing. Rather, we required that some opportunity to be heard be provided a licensee prior to suspension. The opportunity need not be a formal hearing, but must at a minimum give the licensee a chance to alert the Registrar to the possibility that suspension is unwarranted and would be unjust. As *Love* recognized, Illinois has made special provision for hardship situations. The lack of such opportunity in Massachusetts is critical.

■ *Second*, the risk of error under the Illinois scheme is markedly less than under the Massachusetts procedure. The revocation decision in Illinois is based on a series of criminal convictions. As Justice Black-

mun pointed out, the licensee "had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the Secretary's decision was based." 431 U.S. at 113, 97 S.Ct. at 1728. To be sure, there is some risk of human error in Illinois' reliance on criminal record keeping. Yet that risk is insignificant. In contrast, under the Massachusetts procedure, the Registrar's decision is based solely on a form affidavit which the licensee has no opportunity to rebut. The licensee does not have an opportunity to be heard with regard to any of the three factual findings required to be made as a basis for the revocation of his license.[3]

According to the concurring opinion of Justice Stevens, the Supreme Court was not rejecting the constitutional analysis of the District Court in *Love*. His opinion indicates that an ex parte suspension or revocation of a license, based on subjective factors, may not be constitutionally permissible. The inference seems to be that summary action is constitutionally permissible only when it is based on facts that are

rarely, if ever, held on the day the license is surrendered. Both parties acknowledged at oral argument that any factual dispute would make it impossible to hold an immediate hearing. The only matter reviewable on the day of surrender would be whether there was something defective on the face of the report of refusal form. Factual disputes, such as those underlying the instant case, would require the hearing to be postponed for some unpredictable period until the police and other witnesses would be available.

If a Massachusetts licensee were at least given a "same day" opportunity to make a pre-hearing request for emergency relief, the existing constitutional defect would be cured. No evidence would need to be taken at this "same day" hearing. All that need be provided would be an opportunity to alert the registrar to facts which might cause him, in his discretion, to hold up suspension until an evidentiary hearing could be held. Under the existing statutory scheme he has no such discretion.

Indeed, such an approach would be consistent with Judge Campbell's comments at hearing.

"It seems to me if you provided that the Registrar send a letter out to the fellow saying, 'I am going to take your license away if you refuse. If you want a hearing on this, you will have to ask for one in the next five days. Otherwise, your license is suspended.' I would

think in most instances where there was no real dispute about it *that would give someone an opportunity, if he had a situation like this plaintiff, to bring it to the attention of the Registrar.*" (emphasis supplied). Transcript p. 30.

"Well, my feeling would be that at the time this hearing is held, where the fellow has turned in his license, the hearing officer might hold up the suspension until the witnesses came in. If a different story is told then, then the Registrar might say, 'all right. Hold up the suspension for ten days until I get to the bottom of this.'" Transcript p. 39.

We feel that these comments of Judge Campbell are right on the mark and, if adopted by the Commonwealth, would provide those in the position of the plaintiff with a constitutionally adequate procedure for seeking relief.

3. As we pointed out in our original opinion, the arresting officer must attest to three matters: that the licensee was arrested; that the officer had reasonable grounds for believing that the person had been operating a motor vehicle while under the influence of intoxicating liquor; and that the person refused to submit to a breathalyzer test after being informed that his license would be suspended as a result of such a refusal. Opinion 429 F.Supp. at 394, n. 1.

objectively ascertainable. We respectfully disagree with our brother that the three issues which must be set forth in the police officer's affidavit amount to "a simple, objectively-ascertainable event: i. e., a refusal to take a chemical or breath test. . . ." The facts of this case demonstrate that the contrary is true. Here, plaintiff claims he was willing to take the breath test but the opportunity to do so was denied him. The findings of the state judge support his contention. "Breathalyzer refused when requested within one half hour of being at the police station. See attached affidavit and memorandum. Smith." The action was dismissed. Transcript at p. 5. Judge Campbell's query as to whether plaintiff's conduct at the police station "qualifies as a refusal" ignores the state court's finding that the plaintiff was refused the opportunity to take the test, not the other way around. The licensee in Massachusetts is not only presumed to be in violation of the statute, but is required to suffer the adverse consequences of such presumed violation without any opportunity to be heard.[4] The challenged Massachusetts procedure is simply not comparable to that approved in *Love.*

*Finally,* nothing in our opinion burdens the Commonwealth's valid interest in removing unsafe drivers from the highway. Regardless of the challenged statute, a positive breathalyzer test does not automatically remove the chronic drunk driver from the road. He may continue to drive until he is duly convicted.[5] Indeed, in the Registrar's discretion, a conviction of drunk driving need not lead to license revocation. Providing an opportunity to be heard prior to automatic suspension for refusal to take

a breathalyzer test—the sole effect of our opinion—does not offend the state interest in safe highways. We conclude that our evaluation, of the Governmental interest at stake here, 429 F.Supp. at 399–400, is unaffected by *Love.*

Accordingly, the court declines to modify its judgment as a result of the opinion in *Love.* An order will issue.

LEVIN H. CAMPBELL, Circuit Judge (dissenting).

I disagree with my colleagues' judgment that this case is substantially distinguishable from *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). In that case the Court upheld the Illinois Driver Licensing Law which, under "point system" regulations adopted in Illinois by the Secretary of State, called for immediate suspension without prior hearing of the licenses of those whose licenses had already been suspended for moving vehicle violations on three occasions within ten years. In the present case we are confronted with a Massachusetts law which, in order to compel those arrested for drunken driving to take an immediate chemical or breath test, penalizes the refusal to take such a test by a 90-day license suspension. Like the Illinois law, the Massachusetts law calls for a suspension only upon the occurrence of a simple, objectively-ascertainable event: i. e. a refusal to take a chemical or breath test, as certified to under penalties of perjury by the officer witnessing the refusal. And, going beyond any safeguards in the Illinois law, Massachusetts provides for a full hearing commencing, though not necessarily

---

4. Moreover, we cannot agree with Judge Campbell's conclusion that . . . "it is hard to imagine a sober driver refusing to take the test whether or not there was cause for his arrest. . . ." The negative inference he draws is a little too close to that too often drawn by lay persons willing to assume that one who relies on Fifth Amendment rights must be guilty of something.

5. In contrast to the Illinois statute, the Massachusetts statute does not directly enhance high-

way safety. The Illinois statutory provision which was upheld in *Love* was designed to remove drivers from the road who had been repeatedly *convicted* for traffic offenses. 431 U.S. 105, 97 S.Ct. 1723. Under the Massachusetts statutory scheme, summary license suspension is not based on any judicial determination of a driver's danger to the public. Rather, as noted above, it occurs solely because the motorist, whether drunk or sober, refuses to take a chemical test.

ending, the very same day the license is surrendered.[1]

It was stipulated[1a] that of 884 traffic fatalities in Massachusetts in 1975, 283 resulted from accidents in which alcohol was determined as the attributing cause. It was further stipulated that approximately 300 people were refusing to submit to breath analyses tests in Massachusetts every month. Given the state's compelling interest in lessening the carnage on its highways caused by intoxicated drivers, and given also the statute's minimal restrictions on personal liberties, I can see no basis whatever for declaring it unconstitutional. Under *Love* and *Mathews v. Eldridge*, 424

U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), I would vacate the injunction and dismiss the complaint.

My colleagues make much of the reference in *Love* to a special provision for hardship and for holders of commercial licenses.[2] Since plaintiff is not a commercial licensee the latter is inapposite, but he would, in the Illinois scheme, once his license was suspended, be eligible, as under Massachusetts law he is not, to apply for a limited hardship permit.

There are two answers to this attempted distinction. First, Massachusetts, unlike Illinois,[3] affords a licensee a hearing com-

---

1. My brothers, while agreeing that there is provision for an immediate hearing with counsel at the time of the license surrender (*see* Note 11 of the court's opinion written by Judge Freedman and concurred in by Judge Tauro), now assert that "hearings are rarely if ever held on the day the license is surrendered". They apparently base this assertion on the fact that if testimony has to be taken, the hearing will be continued until the presence of necessary witnesses, such as the police officers, can be secured. But postponing the evidentiary part of the hearing does not alter the fact that a non-evidentiary hearing, with counsel, is available to the licensee on the same day the license is surrendered. (*See* Note 11 of my brothers' main opinion, which the transcript fully supports.) As Mr. Hagopian, plaintiff's attorney stated, "If you walk into the Registry down there with your license and give it to the Registrar, you get a hearing right away." (Tr. 11) "[A]s I understand the statutory procedure, under § (g) you can get an immediate hearing before the Registrar." (Tr. 14) Mr. Hagopian's objection to this procedure (besides the fact that it comes, in his view, too late) is that so much of the hearing as is available on the day the license is surrendered is non-evidentiary. He argues, "You are not going to get your license back that day if you contest the factual issues unless there is something defective upon the face of the affidavit or report of refusal form." Still, the opportunity to appear before the Registrar's delegate with counsel is nonetheless a "hearing", albeit a non-evidentiary one, affording the license holder an opportunity to point out errors to the Registrar which do not require the taking of evidence to resolve. And while there is no evidence as to when in time the opportunity to present testimony in the continued proceeding may normally be expected, there is no reason to assume that this will not occur with reasonable expedition, depending upon the availability of witnesses, the schedule of the hearing officer, and the usual

considerations that affect the holding of hearings of this nature.

1a. Although plaintiff did not execute the stipulations as to facts, Mr. Hagopian stated, in response to my query as to whether there was an agreed statement of facts, "That is correct." (Tr. 3)

2. Under the Illinois law and regulation, commercial licensees are allowed 5 rather than 3 offenses before mandatory suspension. Eligibility for relief under that section is not automatic, but requires the commercial driver whose license "is suspended", *Dixon v. Love*, 431 U.S. 105, note 7, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), to establish eligibility after surrendering his license. Illinois law also allows any driver whose license is suspended or revoked to apply for a restricted hardship permit to drive between his residence and his place of employment or within other proper limits, but only at the end of a post-suspension review proceeding which occurs only "as early as practical" after the already suspended licensee has requested it. *Id.; see* Ill.Ann.Stat. ch. 95½, § 6–206(c)(3) (Smith-Hurd Supp. 1977). My colleagues are thus in my view mistaken in their statement, "Unlike the situation in *Dixon*, Massachusetts provides no opportunity for emergency relief prior to suspension." Massachusetts provides no such opportunity, but neither does Illinois.

3. Under the Illinois plan, the suspended licensee was only entitled to a hearing "as early as practical" within 20 days after requesting one. In Massachusetts, by contrast, a hearing, with attorney present, is available commencing immediately (*see* note 1). At such a hearing, according to the stipulated facts, "the hearing officer examines the Report of Refusal to Submit to Chemical Test to determine that it is complete and complies with the requirements

mencing the very day he surrenders his license. To be sure, if witnesses are required, a continuance may be needed to bring in the material witnesses, but if the issue can be resolved without witnesses it can be disposed of the same day, and, if not, there is no reason to suppose that the taking of evidence will not proceed with reasonable dispatch. In Illinois, on the other hand, the licensee may have to wait for some time after suspension of his license for a hearing. His only opportunity is to apply *after suspension* for a hardship permit (the consideration and granting of which may, presumably, take some time). In Massachusetts, one gets a hearing commencing the same day the license is surrendered; and the features my brothers think most essential—i. e. alerting the Registrar to the possibility that suspension is unwarranted and would be unjust—can take place that very day and could, in the case of clerical or other obvious errors, result in return of the license then and there. (*See* Note 11, the court's opinion.) Thus to the extent the Illinois hardship provision is seen as adding to the suspended licensee's due process rights,[4] the opportunity in Massachusetts for a hearing commencing the same day that the license is surrendered seems to me not only a fully adequate counterpart but quite possibly an improvement.

The second reason for doubting that the Illinois hardship provision adequately distinguishes *Love* is that that provision, while cited, was but one of a number of factors discussed in *Love*, and hardly the most crucial. The Court pointed out that "a driver's license may not be so vital and essential as are social insurance payments [dealt with in *Eldridge*] on which the recipient may de-

pend for his very subsistence". *Id.* (Under *Eldridge* a social security beneficiary may be deprived of benefits for as much as a year or more while hearings take place.) The Court went on to say, "Moreover, the risk of an erroneous deprivation in the absence of a prior hearing is not great." The same is true here. The only question is the existence or non-existence of a readily observable fact. One is hard put to think of a genuine factual or legal issue which would exist in the generality of cases. To be sure, the issue plaintiff asserts here, whether an initial refusal followed by a later request to take the test qualifies as a refusal, may be the rare exception. If an arrestee can wait until his blood or breath levels show less alcohol, the usefulness of the test is diminished; on the other hand, the Registrar or state courts may find it unreasonable for the police not to accommodate a change of heart made in good faith with reasonable promptness. Once settled, however, such a matter of statutory interpretation would be nonrecurring; and it is difficult to imagine similar issues that are likely to arise in the administration of this utterly simple statute.

To be sure, a driver might assert that the police had required the test after arresting him without cause. But it is hard to imagine a sober driver refusing to take the test whether or not there was cause for his arrest; if improperly arrested, he would take the test and sue for false arrest, not put his license in jeopardy. And if the licensee feels that he is the victim of false police affidavits, he would be raising a claim to which the Illinois point system is equally vulnerable. If a police officer or

---

of Ch. 90 § 24(1)(f). If the Report is not complete or does not comply, the hearing officer returns the driver's license in hand to the licensee. If the Report is complete and complies, the burden is on the licensee to show that one of the factual issues set forth in Ch. 90 § 24(1)(g) was in the negative, i. e., there was no probable cause, no arrest, or no refusal to submit. The hearing officer will adjourn the hearing at his own request, or upon the request of the licensee, to permit the police officers or other witnesses to be brought in for questioning, or for counter affidavits to be submitted, or

to allow the hearing officer to interview witnesses in the field.

"Witnesses at a hearing may be questioned by the hearing officer, or a licensee, or his attorney. From an adverse decision of the Registrar, a licensee may take an appeal to the Board of Appeals pursuant to G.L. Ch. 90 § 28."

**4.** I take it there is no claim that the Constitution grants any substantive right to receive a hardship driver's permit notwithstanding a refusal to submit to a chemical or breath test.

bureaucrat is willing deliberately to commit perjury, the citizen's ultimate recourse must be under various state and federal tort and criminal statutes. In 999 cases out of 1,000 I cannot see what there will ever be to try concerning the fact of refusal to take a chemical or blood test. And conceding that, on a rare occasion, that one meritorious case will arise, the opportunity for immediate hearing which Massachusetts affords seems to me to go far to obviate hardship.[5] While such a rare case would likely involve disputed facts requiring the taking of evidence, and thus would involve surrender of the license in the interim, it does not seem unfair to require a licensee who, on the sworn affidavits of the officers has declined to take the test, to put up with that hardship. To strike the balance the other way— to permit people to litigate such an unlikely question while retaining their licenses— seems to me to impose an unfair added burden upon the society that ultimately pays both the costs of drunken driving and the salaries of the additional registry officials needed to administer a more elaborate system.

Finally, I have great difficulty with my brothers' confident assertion that "nothing in our opinion burdens the Commonwealth's valid interest in removing unsafe drivers from the highway." This may be their belief, but it clearly is not shared by the Massachusetts Legislature, the Registrar of Motor Vehicles, or the Attorney General, all of whom are charged, as the federal courts are not, with the primary duty to make this sort of judgment. As I argued in my earlier dissenting opinion, and as the *Love* Court has said,

". . . the substantial public interest in administrative efficiency would be impeded by the availability of a preterminа-

tion hearing in every case. Giving licensees the choice thus automatically to obtain a delay in the effectiveness of a suspension or revocation would encourage drivers routinely to request full administrative hearings . . .." 431 U.S. at 114, 97 S.Ct. at 1728.

My brothers seek to avoid the implications of this statement by stating that they do not require nor view as constitutionally necessary "a pre-suspension evidentiary hearing". They concur with plaintiff's counsel who, in final argument, made the statement "we do not insist upon a hearing—just notice and an opportunity to respond." Plaintiff forgets, however, that in arguing the inadequacy of the hearing which the Registry offers when a licensee surrenders his license, his principal argument was that the hearing when commenced was non-evidentiary, and hence incapable of immediately resolving the factual dispute which had arisen. I suggest that a non-evidentiary pre-suspension hearing would have been totally useless to plaintiff. His case can only be resolved in light of testimony, as he seemed to concede. *See* note 1 *supra*. Individuals such as plaintiff who wish to assert a factually disputed claim will gain nothing from a non-evidentiary hearing. All a non-evidentiary hearing prior to suspension would do is cure simple mix-ups. But this function is perfectly well accomplished by the non-evidentiary hearing which a licensee may obtain the day he surrenders his license. What Massachusetts now provides—the opportunity for a full hearing beginning the very day the driver hands in his license—seems to me to strike a reasonable balance between the individual's interests and those of the state.

---

**5.** The *Love* Court recognized the possibility of occasional clerical error but felt this did not outweigh the state's interest in summary procedures. Overall, the Illinois point scheme, of which *Love* upheld one small feature, is far more complicated than the very simple Massachusetts statute now before us, inviting more administrative errors. Plaintiff's claim here is not, of course, based on administrative error at all. It raises a question that plainly could not

have been resolved in the simple, non-evidentiary type of presuspension hearing which is all my brothers say is constitutionally necessary before a suspension. Simple errors of the type my brothers' procedure might eliminate can be solved under the existing Massachusetts law either by informal communication between the driver and the police and/or registrar, or else at the non-evidentiary hearing available the same day the driver turns in his license.

It is worth focusing, moreover, on the problem faced by Massachusetts. It is dealing with a problem—arrested drivers refusing to take the test—which even under the challenged Massachusetts system arises in that state 300 times a month. Meaningful machinery to deal with the problem has to be capable of mass administration. Intoxicated drivers can often talk their way out of a drunken driving conviction, in court, if the police do not have in hand the results of a scientific test taken at the moment of arrest. To the extent drivers are afforded increased opportunities before suspension to delay and litigate any suspension, they will be encouraged to try their chances with a refusal. Even if finally required to forego the license (for 90 days) much time will have transpired, and the state will have had to expend time and money in what in virtually all instances will be useless administrative proceedings invoked simply to buy time or in the hope that something favorable will turn up.

I think that Massachusetts could rationally determine that the procedure in question was the most practical and effective one. The non-evidentiary pre-suspension hearing my brothers seem to require will add no measurable protection to the present system; if, on the other hand, they mean to require a hearing that will enable the Registrar to delay suspension until after investigation into contested facts, they are proposing something which will constitute a serious encumbrance. Since the present system is fundamentally fair, since it is devised to deal with a problem of compelling importance to the state, since it was adopted by the people (most of whom drive) through their legislators (most of whom drive), and since the potential for hardship to an innocent person seems altogether minimal in comparison with the interests served, I think the Massachusetts law should be sustained. While there are inconsequential differences between it and the Illinois system at issue in *Love*, the principles in *Love* seem to me dispositive.

I would allow the motion for reconsideration, vacate the injunction, and dismiss the complaint.