**STATE of Maine**

v.

**Reginald R. BALLARD.**

Supreme Judicial Court of Maine.

May 5, 1978.

James W. Gallagher, Asst. Dist. Atty., Wiscasset (orally), for plaintiff.

Richard W. Elliott, Boothbay Harbor (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Defendant was charged by complaint, tried before a jury, and convicted of the offense of operating a motor vehicle while under the influence of intoxicating liquor, in violation of 29 M.R.S.A. § 1312 (Supps. 1973, 1977). He appeals the judgment entered against him on his conviction.

We deny the appeal.

The evidence introduced at trial would support the following findings of fact. On June 2, 1977, at approximately 4:30 p. m., Robert Sanborn, a State Police trooper, learned by radio that a two-car collision had just taken place in the town of Boothbay. By the time he arrived at the accident scene about one-half hour later, the two occupants of one vehicle had been removed to a nearby hospital for treatment. After examining their vehicle for ownership identification, Trooper Sanborn noticed a bystander, the defendant Reginald Ballard, who, upon being asked by Sanborn, admitted that he had been the driver of the second vehicle involved in the collision. Sanborn noted that the defendant had "a strong odor of alcohol about him," "a complete blank look," and "bloodshot eyes." Upon request, Ballard followed Sanborn to the latter's cruiser, sat down inside, and furnished information to the officer who completed an accident report. A short time later, Trooper Sanborn by radio received a description of the driver of the second vehicle which the injured parties had provided at the hospital. After matching that description to the defendant, Sanborn advised Ballard that he was under arrest for operating a motor vehicle while under the influence of liquor. Trooper Sanborn then drove the defendant to the Lincoln County courthouse, where Sanborn read him the "implied consent warnings" and he submitted to a blood test. The defendant made no objection whatever at the time of the test but did at trial assert that he submitted to the test only because of his understanding that "[u]pon a refusal to submit to a blood test, or breathalyzer test, you lose your license immediately. Because of that, I'd lose my job."

At trial, the State offered in evidence the test results which showed that the defendant had a blood alcohol percentage of .29 at the time of the test. By his specific objection at trial, the defendant appropriately preserved his claim that such evidence should not have been admitted because it was obtained through the coercive effect of what he asserts is an unconstitutional statute.

The so-called implied consent statute, 29 M.R.S.A. § 1312 (Supps.1973, 1977), provides that if a person under arrest for operating under the influence refuses upon the re-

quest of a law enforcement officer to submit to an alcohol test, his operator's license will be suspended with no prior notice and hearing.[1] A post-suspension hearing is available solely on the issues of the existence and legality of the arrest and the operator's refusal of the test. *Ibid.* The defendant argues that these suspension provisions violate due process because the operator is deprived of his license without any prior notice and hearing. The defendant cites in support of the unconstitutionality of the Maine statute the two-to-one decision by a three-judge district court in the District of Massachusetts, *Montrym v. Panora*, 429 F.Supp. 393, 438 F.Supp. 1157 (D.Mass. 1977), *prob. juris. noted,* —— U.S. ——, 98 S.Ct. 1603, 56 L.Ed.2d 58 (1978), which declared unconstitutional and enjoined the enforcement of similar suspension provisions of the Massachusetts implied consent law. The *Montrym* case, which is now pending on appeal before the United States Supreme Court, is, however, a *frontal* attack upon the enforcement of the suspension provisions. The defendant here seeks to make a much more *remote* attack on the statute.

Whatever may have been his reasons for doing so,[2] this defendant did take the alcohol test. The results reliably showing his intoxication were admitted in evidence; and since he never refused the test, he was never subjected to the statutory sanction of license suspension. But, he in effect argues that those test results were illegally obtained evidence because they were obtained from him only by the coercion exerted upon him (because of the sure license suspension if he refused the test) by what he claims are unconstitutional suspension provisions, and as such should be excluded from evidence.

The defendant would have us not only declare the suspension provisions unconstitutional for failure to provide a pre-suspension hearing, but also apply an exclusionary rule that would deprive the factfinder of the reliable evidence produced by the chemical test. He would have us reverse his conviction, *not* on the ground there is the slightest doubt that the jury acted entirely reasonably on the evidence before it in finding him guilty beyond a reasonable doubt, *nor* on the ground there was the slightest question of the accuracy of the chemical

1. 29 M.R.S.A. § 1312(2) (Supp.1977) provides:

"If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, none shall be given. The Secretary of State, upon the receipt of a written statement under oath, within 20 days of the date, of the arrest of a person for operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor, and that such person had refused to submit to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, shall immediately notify the person, in writing, as provided in section 2241 that his license or permit and his privilege to operate have been suspended. Such suspension shall be for a period of 3 months for a first refusal under this or any prior implied consent provision under Maine law. If such refusal is a 2nd or subsequent refusal under this or any prior implied consent provision under Maine law, such suspension shall be for a period of 6 months.

"If such person desires to have a hearing, he shall notify the Secretary of State within 10 days, in writing, of such desire. Any suspension shall remain in effect pending the outcome of such hearing, if requested.

"The scope of such a hearing shall cover whether the individual was lawfully placed under arrest and whether he refused to submit to one of the tests upon the request of a law enforcement officer. If it is determined, after hearing when such is requested, that such person was not arrested or did not refuse to permit a chemical test to determine his blood-alcohol level by analysis of his blood or breath, any suspension in effect shall be removed immediately."

2. The defendant's testimony at trial, unsupported by any protest on his part at the time he submitted to the blood test, that he submitted only because he feared immediate suspension of his, license if he refused, was apparently adduced in an attempt to give him the standing which this court found the defendant in *State v. Van Reenan*, Me., 355 A.2d 392, 396 (1976), had failed to establish. We do not decide whether Ballard has succeeded in establishing standing where Van Reenan failed because we hold that in no event is this case an appropriate occasion for applying an exclusionary rule to reliable evidence of Ballard's guilt on the charge of operating under the influence.

test showing him to have a blood alcohol content of .29%. There is not the slightest suggestion that the defendant was not in truth guilty as charged.

Before this court excludes scientific evidence acquired by a chemical test, which experience has proven a reliable indicator of intoxication or sobriety, we ought to be able to identify some significant public interest that would justify such drastic action. No such overriding reason of public policy appears in the circumstances of the present case. Doubts as to the effectiveness of the principal rationale underlying application of the exclusionary rule, namely, the deterrence of unlawful official conduct, have been raised even in its usual Fourth, Fifth, and Sixth Amendment contexts.[3] *See, generally,* ALI, *A Model Code of Pre-Arraignment Procedure* Commentary on § 150.3 (1975). That rationale, in any event, provides no support for excluding the evidence of an alcohol test where the defendant's constitutional attack focuses upon the validity of a statutory provision for license suspension—itself only tangentially related to the action of the police in getting the blood sample. The other policy justifications for the exclusionary rule, namely,

> "that it serves to prevent prejudice at trial by eliminating unreliable, inflammatory or otherwise prejudicial evidence; and . . . that it preserves the integrity of the court by preventing its involvement in 'dirty business'," (*id.* at 395)

simply have no application in the context of the present case.

To offset the harm to the truth-seeking process that would be produced by excluding the test results, we can find no adequate public purpose that would be served in the circumstances of this statute and this case. If the statute is in fact unconstitutional,[4] anyone who is threatened with loss of his license because he refused the alcohol test has available a direct remedy of enjoining a threatened suspension, *cf. Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (direct challenge in federal court of license revocation pursuant to Illinois administrative rule for mandatory revocation upon a licensee's third suspension within ten years), or appealing from any suspension actually effected by the Secretary of State, *see Small v. Gartley*, Me., 363 A.2d 724 (1976). To turn free the guilty is here too high a price to pay, particularly in view of the fact that any action by the Secretary of State under the suspension provisions, if unconstitutional, may be enjoined or reversed through a frontal attack on the statute.

We have examined the remaining arguments of the defendant and find none to have merit.

The entry must be:

Appeal denied.

Judgment affirmed.

POMEROY and DELAHANTY, JJ., did not sit.

**3.** As we have frequently had occasion to remark, prior to controlling developments in federal constitutional law, Maine followed the common law rule that the admissibility of evidence is not affected by the illegality of the means by which obtained. *See State v. Caron*, Me., 334 A.2d 495, 502–03 (1975) (Dufresne, C. J., dissenting); *State v. Schoppe*, 113 Me. 10, 92 A. 867 (1915).

**4.** Our comments should not be read to intimate an opinion that we detect some constitutional defect in the Maine implied consent statute.

*Cf. Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). We have no occasion to reach that question because whatever our decision might be in a *frontal* attack on the constitutionality of the suspension provisions, we will not permit the *remote* attack attempted here through an exclusionary rule. We will not exclude the results of a blood test from evidence, if proper in all other respects, even though the statute might be determined to be unconstitutional at the behest of one threatened with its application.