**John HARRIS, Plaintiff,**

v.

**The STATE OF COLORADO, Alan Charnes, George Theobald and R. W. Skeen, Defendants.**

**Civ. A. No. 80–K–736.**

United States District Court, D. Colorado.

June 18, 1981.

Philip A. Cherner, Denver, Colo., for plaintiff.

Richard Forman, Asst. Atty. Gen., Denver, Colo., for defendants.

## MEMORANDUM OPINION

KANE, District Judge.

This § 1983 action was tried on stipulated facts. Plaintiff claims his due process rights were violated by the state procedures for renewing the suspension of his driver's license. The procedures are as follows. On June 14, 1979 plaintiff's driver's license was suspended until April 8, 1980 because he had accumulated excess points for traffic offense convictions. On January 27, 1980 he was arrested and charged with driving under suspension. On April 9, 1980 his license was reinstated. On May 19, 1980

plaintiff pleaded guilty to driving under suspension in county court, but the court found he was driving in an emergency and suspended the five day mandatory jail sentence. At this point plaintiff's attorney entered the picture and it was eventually stipulated in this lawsuit that plaintiff could keep his license pending resolution of this action. The usual procedures require that when record of a conviction is received by the Department of Revenue it is entered into the department's computer records. The computer will show if the driver was under suspension when the offense was committed. If he was, the suspension will be extended if the driver is still under suspension or renewed if the license has been reinstated. The driver can then request a hearing to show insufficient notice or that an emergency existed at the time of the violation. It should be noted that the finding of emergency is conspicuously noted on the transcript of the conviction and pursuant to Reg. 2–130.8(F)(1) the findings of the county court are binding upon the department. Thus, the renewal or extension of the suspension will be automatically rescinded at the hearing.

Plaintiff contends that where the county court has found an emergency, a hearing should be granted by the department before the suspension is renewed and failure to do so is a violation of the due process rights guaranteed by the constitution and Colorado law.

Colorado law does not require a hearing before there is a renewal of the suspension. Three Supreme Court decisions, however, indicate that a pre-renewal of suspension hearing may be required. It is clear that the due process clause applies to a state's suspension or revocation of a driver's license. *Mackey v. Montrym*, 443 U.S. 1, 11, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979); *Dixon v. Love*, 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); and *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). In *Bell*, the court reasoned that once a license is issued it may become essential in the pursuit of a livelihood and thus the suspension of a license involves state action that adjudi-

cates important interests of the licensees. Since there is a protected interest, it must be decided what process is due to protect against erroneous deprivations of that interest. *Mackey*, 443 U.S. at 10, 99 S.Ct. at 2617.

In the instant case, plaintiff's suspension is summarily renewed before he obtains a hearing. Eventually plaintiff receives a hearing. Thus plaintiff will eventually obtain all of the safeguard procedural due process can be thought to require. The real issue is timing and the extent to which due process requires an evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing is provided thereafter. *Dixon v. Love*, 431 U.S. at 112, 97 S.Ct. at 1727. The Supreme Court has employed the following balancing test:

> "Identification of the specific dictates of due process generally requires consideration of three distinct factors; *first*, the private interest that will be affected by the official action; *second*, the risk of erroneous deprivation of such interest through the procedures used, and probable value, if any of additional or substitute procedural safeguards; and *finally* the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (emphasis added) *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18

The first step in the balancing process is identification of the nature and weight of the private interest affected by the official action challenged. *Mackey*, 443 U.S. at 11, 99 S.Ct. at 2617. Here the private interest is the granted license to operate a motor vehicle and the driver's interest in continued possession and use of his license pending the outcome of the hearing due him. *Id.* This interest is a substantial one for the state will not be able to make a driver whole for any personal inconvenience and economic hardship suffered by reason of any delay in redressing an erroneous sus-

pension through postsuspension review. *Id.,* at 11, 99 S.Ct. at 2617, *Dixon,* 431 U.S. at 113, 97 S.Ct. at 1727. The *Mackey* court found that the duration of any potentially wrongful deprivation as well as the relative timeliness of postsuspension review are important factors in assessing the impact of the official action on the private interests involved.

In *Mackey* the postsuspension hearing was available immediately upon suspension, whereas in *Dixon* it was within 20 days after a written request. In addition, in *Mackey* the maximum suspension was for 90 days while in *Dixon* it was for as long as a year and possibly indefinitely. In both cases the court found that the nature of the private interest was such that something less than an evidentiary hearing was sufficient prior to adverse administrative action.

In the instant case, postsuspension review is usually provided within thirty days of the order of extension or renewal. The driver is given the first available time on the docket. Thus the loss may be for a very short period of time as in *Mackey* (immediately) and *Dixon,* (20 days). The duration will be for however long it takes to obtain the hearing since it is certain the renewal will be rescinded. Thus neither the weight or nature of the interest invaded here compels a result contrary to *Dixon* and *Mackey.*

Because a primary function of the legal process is to minimize the risk of erroneous decisions, the second stage of this inquiry requires consideration of the likelihood of an erroneous deprivation of the private interest involved as a consequence of the procedures used. *Mackey,* 443 U.S. at 13, 99 S.Ct. at 2618. It is on this point that defendants system defies reason. It is clear that they must follow the decision of the county court that there was an emergency. Thus, at the postsuspension hearing, the renewal of suspension will undoubtedly be vacated. It is clear that these procedures *guarantee* an erroneous deprivation. Although the due process clause has never

been construed to require that procedures be so comprehensive as to preclude any possibility of error, *Mackey,* 443 U.S. at 13, 99 S.Ct. at 2618, it seems clear that procedures should not guarantee error. Thus these procedures require a result different from *Dixon* and *Mackey.*

The third leg of the *Eldridge* balancing test requires identification of the governmental functions involved; the state interests served by summary procedures used, as well as the administrative burden, if any, that would result from the substitute procedures sought. *Mackey,* 443 U.S. at 13, 99 S.Ct. at 2618. Defendants contend that the government's interest here is in safe roads and highways and prompt removal of safety hazards. The state also contends that these regulations are only applicable against drivers previously determined to be unable or unwilling to respect traffic laws and license suspension is the major deterrent to such offenses. However, the state has clearly established a defense to driving under suspension. Thus, the state has determined that there are circumstances where driving under suspension is not a violation or a safety hazard. Once this defense is established the department is bound by it. It seems clear that the regulation does not contribute to highway safety.

Defendants also contend that renewal is essentially a deliberative process and should not be left to the discretion of clerks, but determining that a driver has established a valid defense of emergency in this situation is quite simple; it is stamped on the transcript of the conviction. This does not involve *any* discretion. Other defenses may require a hearing and plaintiff does not argue otherwise. Here, however, the defense is plain, on the face of the record, and ironclad. In addition, since a hearing is provided in any case, having it before the suspension is renewed would not be more expensive or burdensome to the state.

Plaintiff argues that C.R.S. § 42–2–123(1)(d)[1], which applies to the initial sus-

---

1. No suspension or denial shall be made until a hearing is held in accordance with the provisions of this section.

pension of a license is also applicable to the renewal of a suspension. However, *Ewing v. Motor Vehicle Division,* 624 P.2d 353, 355 (Colo.App.1980) holds that the grant of discretion conveyed by C.R.S. § 42–2–130 is not defined by C.R.S. § 42–2–123. The *Ewing* court also held that the discretion granted by § 42–2–130 does not require the department to grant all of the rights available at the time of suspension pursuant to C.R.S. § 42–2–123. Thus the requirements for a hearing in § 123 cannot be extended to § 130.

The statute is silent regarding hearings under § 130, contrary to other sections which specify when a hearing shall be held. In addition, summary administrative suspensions of other types of licenses without a pre-termination hearing have been upheld on procedural due-process grounds. *New Safari Lounge v. City of Colorado Springs,* 193 Colo. 428, 567 P.2d 372 (1977) (liquor license); *Colorado State Board of Examiners v. District Court,* 191 Colo. 158, 551 P.2d 194 (1976). In addition, since plaintiff would receive a hearing in any case, it is clear that Colorado law does not require a pre-renewal of suspension hearing. It is obvious from the foregoing, however, that the present practice of renewing suspension pending a hearing at which vacation of the renewed suspension is a certainty violates the due process of law. Accordingly,

IT IS ORDERED that defendants are permanently enjoined and prohibited from renewing the suspension of plaintiff's driver's license on the basis of the facts here presented. Defendants are not so restrained from taking action against the plaintiff for any other or further infractions of state law.

IT IS FURTHER ORDERED that the policy of the defendants complained of herein is declared to be unlawful and violative of the due process of law as guaranteed by the Constitution of the United States and,

IT IS FURTHER ORDERED that plaintiff is the prevailing party and is entitled to reasonable attorney fees pursuant to 42 U.S.C. § 1988 and for his costs herein expended and

IT IS FURTHER ORDERED that entry of judgment herein shall be stayed for a period of twenty days during which the parties are to confer to determine whether they can stipulate to the amount of attorney fees they deem reasonable. If such stipulation is not obtainable, then within said twenty day period, plaintiff's counsel shall notify the court and the matter of attorney fees will be set for hearing.