Claude BENBOE, D. E. Smith and
Johnson Bonding Company,
Inc., Plaintiffs,

v.

Julian M. CARROLL, Governor,
Commonwealth of Kentucky et
al., Defendants.

Civ. A. No. C 76–0566 L(4).

United States District Court,
W. D. Kentucky,
Louisville Division.

June 16, 1977.

On Motion for Attorneys' Fees
Nov. 2, 1977.

Samuel Manly, Louisville, Ky., for plaintiffs.

C. Gibson Downing, Stoll, Keenon & Park, Harry B. Miller, Miller, Griffin & Marks, Lexington, Ky., for defendants.

ALLEN, District Judge.

This action is submitted to the Court on the motion of the defendants to dismiss the complaint, which was converted into a motion for summary judgment by order of the Court, lengthy and exhaustive briefs having been filed by the parties.

Plaintiffs, all of whom were, until July 6, 1976, licensed professional bail-bondsmen in Kentucky, challenge the constitutionality of K.R.S. 431.510 et seq., which abolished the commercial bail-bond system in Kentucky and made it unlawful for professional bail-bondsmen to furnish bail, or funds, or property to serve as bail, and provided, also, that the violation of the law was punishable as a Class A misdemeanor for the first offense and as a Class D felony for each additional offense.

The complaint alleges five counts; the first is that the Act of the Legislature is a bill of attainder and is in violation of Article I, Section X of the Constitution of the United States. The second count alleges that the Act impairs the right to contract and is void as repugnant to Article I, Section X of the Constitution. The third count alleges the violation of First, Fifth and Fourteenth Amendment rights of association and of the right not to be deprived of property and livelihood without due process of law. The fourth count, in essence, repeats in part the due process claims of the third count, and asserts an equal protection claim. Finally, the fifth count alleges that the actions of the defendants are in violation of plaintiff's rights, privileges and immunities secured by the Constitution of the United States.

Since the parties have presented matters to the Court outside the scope of the pleadings, the Court will treat the motion to dismiss as though it were a motion for summary judgment, pursuant to the mandate of Rule 12(b), Federal Rules of Civil Procedure.

The thrust of the motion of the defendants to dismiss is based upon three grounds. The first is that the complaint fails to state a cause of action upon which relief can be granted. The second is that judgments in the Supreme Court of Kentucky, Fayette Circuit Court and the United States District Court for the Eastern District of Kentucky bar or estop the plaintiffs from asserting this action. The third is that the Court lacks jurisdiction over the subject matter of the action.

In order to place the defendants' motion in proper context, it is necessary to discuss in some detail the actions referred to in the motion to dismiss. The first of these actions was brought on March 20, 1976, by the Bonding Association of Kentucky, Don Rigazio, doing business as AA Bonding, and Spencer Bonding Company, Inc. against David L. Armstrong, the Commonwealth's Attorney, in the Jefferson Circuit Court, Chancery Branch.

In that action, plaintiffs alleged that the Bail-bonding Act was unconstitutional and violative of the Fourteenth Amendment of the Constitution of the United States and the Constitution of Kentucky. In the course of that action, a class action order was entered by Judge Charles H. Anderson, stating that the action was to be maintained, pursuant to CR 23.02(1)(b), with the named parties-plaintiff as representatives of the class, consisting of all bail-bonding companies, bail-bondsmen and agents thereof licensed as such by the Commonwealth of Kentucky.

Subsequently, Judge Anderson entered a summary judgment for the bonding companies, holding the bail-bonding act unconstitutional. The Supreme Court of Kentucky reversed Judge Anderson's decision, and their opinion is found in *Stephens v. Bonding Association of Kentucky*, 538 S.W.2d 580 (Ky.1976). An appeal was taken to the Supreme Court of the United States, and an application for stay made, which was denied by Mr. Justice Potter Stewart. Also, it should be noted that the Supreme Court of

Kentucky denied the motion of several professional bondsmen to exclude them from the class action and procedures.

An action was filed in the Fayette Circuit Court in March, 1976, by the Governor of Kentucky and its Attorney General against the Johnson Bonding Company, Frank Bell Bonding Company and Robert L. Robinson, a professional bondsman. The complaint sought a declaration from the Fayette Circuit Court that the Bail-bonding Act was constitutional. A motion to dismiss was filed by Johnson Bonding Company and a class action order was subsequently entered. After the judgment of the Supreme Court of Kentucky in *Stephens v. Bonding Association of Kentucky, supra*, the Fayette Circuit Court entered a summary judgment against the defendants holding that Senate Bill 254 was constitutional.

Finally, Johnson Bonding Company filed a complaint in the United States District Court for the Eastern District of Kentucky against the Governor and Attorney General of Kentucky and against the Commonwealth of Kentucky alleging that House Bill 254 deprives it of its right to contract as guaranteed by the Fourteenth Amendment of the United States Constitution, and violates its Fifth Amendment rights to liberty and property rights to follow their profession free from governmental interference. It is further alleged that 42 U.S.C. Sec. 1983 specifically provides for the right to contract, which is a property right and one of the rights, privileges and immunities secured to plaintiff by the constitutional laws of the United States. Other allegations not pertinent here are made as to violations of the Kentucky Constitution.

District Judge Siler, in an excellent and comprehensive opinion, found, in *Johnson Bonding Company, Inc. v. Commonwealth of Kentucky*, 420 F.Supp. 331 (E.D.Ky. 1976), held that the issues raised by plaintiff's complaint were constitutionally insubstantial and obviously without merit. He dismissed the action and no appeal was taken from his judgment. Also, in the Eastern District of Kentucky, another suit was filed on behalf of various bonding companies attacking the Act on the grounds that the Eighth and Fourteenth Amendments of the United States Constitution had been violated, as well as Kentucky Constitutional provisions, and also alleging that the Act contravened 42 U.S.C. Sec. 1983. A three-judge court was convened, and subsequently dismissed the action for lack of jurisdiction following the entry of Judge Siler's opinion. No appeal was taken from that judgment.

■ As can be observed from the above recital, Johnson Bonding Company has been a named-plaintiff or defendant in two suits which have already ruled that the Bail-bonding Act is constitutional. Furthermore, by virtue of the decision of the Supreme Court of Kentucky, the Bail-bonding Act was held constitutional as to all licensed bondsmen in Kentucky by virtue of the class action order entered by Judge Anderson. We note further that every allegation which is made by the plaintiffs here, with the exception of the allegations relating to the bill of attainder, has been raised in previous suits attacking the constitutionality of the Act. The principle is well established that where a state court rules on federal constitutional questions, the parties cannot maintain further action in the federal court. See *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Also, under the doctrine of *res judicata* or issue preclusion, the plaintiffs are prevented from raising constitutional questions which might or could have been raised in the state action. See *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946); *Grubb v. Public Utilities of Ohio*, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972 (1930); and *Boys Town, U.S.A. Inc. v. World Church*, 349 F.2d 576 (9th Cir. 1965).

■ Furthermore, since the Jefferson Circuit Court action was a class action, the judgment rendered in *Stephens v. Bonding Association of Kentucky, supra*, applies to each and every member of the class and estops them from asserting the Federal Constitutional issues again.

■ While the question of a bill of attainder was not raised in the previous actions, it is apparent that it was an issue that could easily have been raised. Even if we assume, for purposes of argument, that the previous judgments do not bar the plaintiffs from raising the question in this action, it is obvious that plaintiffs have failed to state a cause of action with respect to the bill of attainder issue. A bill of attainder is a legislative act which levies punishment against specified individuals or groups of individuals without a judicial trial. See *Garner v. Board of Public Works of Los Angeles,* 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951); *United States v. Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); *Communist Party of the United States v. Subversive Activities Control Board,* 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).

■ The Bail-bonding Act of 1976 does not fall within the definition set out above, inasmuch as it does not pertain to specific organizations or individuals, but does describe classes of activities in which individuals and corporations shall not engage. The Act, thus, is distinguished from the Act described in *United States v. Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965), which singled out the Communist Party by name and was held to be unconstitutional as a bill of attainder. Also, the statute is not a bill of attainder, inasmuch as it does not provide for retroactive punishment, but provides penalties only for those who engage in the business of bail-bond after the date of the Act. See *Communist Party v. S. A. C. Board, supra,* 367 U.S. at p. 88, 81 S.Ct. at 1406 and *Goodin v. Clinchfield Railroad Company,* 125 F.Supp. 441 (E.D.Tenn.1954), pointing out that where persons may alter their activities and thereby escape regulations, there can be no complaint of an attainder.

The case of *De Veau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) in many aspects is analogous to the case at bar. There an Act passed by the State of New York prohibited the solicitation of assessments, levies, fines or contributions from employees registered under the New York Waterfront Commission Act on behalf of any labor organization representing the employees if any officer or agent of the organization had been convicted of a felony, unless he had been pardoned or received a certificate of good conduct. Plaintiff was an officer of a union representing employees registered pursuant to the Act and had pleaded guilty to a felony charge and had not been pardoned nor received a certificate of good conduct. His union was advised that no one could collect dues on behalf of the union so long as plaintiff remained as an officer. Thereupon, plaintiff was suspended as an officer of the union and he brought suit. He pleaded, among other things, that the Act constituted a bill of attainder.

The Supreme Court discussed, at some length, the corruption and dishonesty which prevailed on the New York waterfront for many years and which led to the passage of the Act. They held that the Act was not a bill of attainder or an *ex post facto* law, and in so doing stated that "(t)he distinguishing feature of a bill of attainder is the substitution of a legislative for a judicial determination of guilt." The court stated that the Act embodies no further implications of appellant's guilt than were contained in his judicial conviction, and so there was no bill of attainder, 363 U.S. at p. 160, 80 S.Ct. at p. 1154.

In the instant case, there is no showing that the Legislature of Kentucky has made a judicial determination of guilt of bail-bondsmen. It has, however, determined that the practice of allowing bail-bonding by professional bail-bondsmen has been harmful to the interest of defendants and to the people of Kentucky, and, therefore, that such professional bail-bondsmen must be eliminated.

While this is a very broad and sweeping Act, the fact remains that it was one which was passed by the Legislature for the purpose of bringing reform and relief to the state bail-bond system. It cannot be designated as one falling within the prohibitions of a bill of attainder. It may be recalled

that bills of attainder were used by English monarchs to confiscate the property and often the lives of their subjects by executive fiat, and also that parliament, exercising its legislative capacity, had the power to pass such a bill, with its consequent disastrous ruinous effects upon those who were attainted.

In the instant case, the plaintiffs have been deprived of the right to make a living in a very narrow field of operation, to wit: that of professional bail-bondsmen; no attempt has been made to deprive plaintiffs of their property, as such, or of their liberty.

▉ Finally, as to plaintiffs' claims that the Bail-bonding Act violates their privileges, immunities, and their equal protection rights, it is apparent that there is no merit therein, since the Act applies equally to all citizens, whether they be residents of Kentucky or not. See *Slaughter House Cases*, 83 U.S. (16 Wall. 36) 36, 21 L.Ed. 394 (1873).

The defendants have requested attorneys' fees from Johnson Bonding Company on the ground that they have acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Here, Johnson Bonding Company, has, for the third time, been involved as an entity in a suit challenging the constitutionality of the Bail-bonding Act. While Johnson was not the plaintiff in the Fayette Circuit Court action, it is charged with knowing that Senate Bill 254 has been held constitutional in that action, and that its own attacks upon the Bail-bonding Act in the Eastern District of Kentucky Court had been vacated by District Judge Siler. Certainly, it should also be held responsible for knowing, through its attorneys, that *Stephens v. Bonding Association of Kentucky, supra,* was a class action, and that the issue of unconstitutionality had been decided by the highest court of Kentucky.

▉ In these days of congested court dockets, it seems peculiarly appropriate to attempt some deterrents on litigants from relitigating time and time again questions which have been disposed of, either as to the individual or as to members of their class. We believe that attorneys' fees

should be awarded to the defendants against Johnson Bonding Company, and direct that defendants furnish to the Court within 15 days an affidavit setting out their time expended in defending this action, and Johnson Bonding Company shall be given 15 days within which to respond to the affidavits, copies of which shall be served upon their counsel.

A judgment in accordance with this opinion has been entered this day.

## ON MOTION FOR ATTORNEYS' FEES

This action is submitted to the Court on the motion of the attorneys for the defendants to award them attorneys' fees of $5,568.75 as to the firm of Stoll, Keenon & Park and $5,793.75 as to the firm of Miller, Griffin & Marks. Also claimed are out-of-pocket expenses as to which no objections have been made.

The Court, after receiving the affidavits of counsel as to the services performed by them and the length of time taken to perform the services, held an evidentiary hearing in order to determine the reasonable value of the attorneys' fees. In determining the reasonable amount, the case of *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corporation, et al.,* 487 F.2d 161 (3rd Cir. 1973), also 540 F.2d 102 (3rd Cir. 1976), holds that the first item to be considered in fixing an attorney's fee is to determine a reasonable hourly rate for the attorney's time, taking into account the attorney's legal reputation and status.

In the case at bar, the Court determines that a fee of $60 per hour for Lyle G. Robey, who did much of the legal work for Stoll, Keenon & Park, represents a reasonable rate, since Mr. Robey has been in practice for six years. The Court also finds that C. Gibson Downing, of the firm of Stoll, Keenon & Park, is an experienced lawyer, as is Harry B. Miller, Jr., of the firm of Miller, Griffin & Marks, and their customary billing rates are $80 to $100 per hour.

The Court further finds that the defendants in this action employed the two law firms to represent them, with their total compensation not to exceed $20,000 for each

firm, and not to exceed $75 per hour. The Court finds, also, that the quality of work done by the defendants was of the highest caliber, but that there was no great likelihood that plaintiffs would prevail in their legal arguments in their action, since virtually all matters raised by them had previously been disposed of in other cases, except for the bill of attainder argument.

The Court finds that, necessarily, there was some duplication of effort as between the two law firms. Also, the Court is unable to determine precisely what amount of overlap there was between the work performed by the two firms, and is also unable to apportion the work done as between Mr. Robey and Mr. Downing.

Taking into consideration all of these factors, we believe that it is appropriate to award the firm of Stoll, Keenon & Park the sum of $4,500 as reasonable attorneys' fees and out-of-pocket expenses in the amount of $64.20.

The Court further holds that the reasonable amount of attorneys' fees to be awarded Miller, Griffin & Marks is the sum of $5,000, together with out-of-pocket expenses in the amount of $60.55.

A judgment in accordance with this memorandum opinion has this day been entered.