**Raymond PEMPEK, et al., etc., Plaintiffs,**

v.

**Jim EDGAR, Secretary of State of Illinois, et al., Defendants.**

**No. 83 C 7055.**

United States District Court, N.D. Illinois, E.D.

June 6, 1984.

On Motion to Dismiss Dec. 26, 1984.

---

Roderick F. Mollison, Jerome J. Adams, Chicago, Ill., for plaintiffs.

Roger P. Flahaven, Asst. Atty. Gen., Chicago, Ill., for Jim Edgar.

Robert W. Fioretti, James D. Montgomery, Chicago, Ill., for City of Chicago.

## MEMORANDUM OPINION AND ORDER

DECKER, Senior District Judge.

Raymond Pempek (Pempek) and Gary Sternberg (Sternberg) brought this section 1983 action against the City of Chicago (the City) and Jim Edgar, the Illinois Secretary of State (Edgar or the Secretary). The complaint alleges that the City violated Pempek's constitutional rights in connection with his arrest for twenty delinquent parking tickets and that Edgar deprived him of his constitutional rights when Edgar suspended his driver's license. Sternberg charges that the suspension of his driver's license deprived him of his constitutional rights. Both the City and Edgar move to dismiss.

### I. *Factual Background*

On August 26, 1983, Pempek "was arrested pursuant to [a] warrant issued by the Clerk of the Circuit Court of Cook County, Illinois, charging the Plaintiff with twenty (20) outstanding municipal automobile parking violation notices against him." Amended Complaint at ¶ 1. The same day, he paid $400.00 as a bail bond. The clerk issued a bail order demanding Pempek's appearance on October 6, 1983 at 321 North LaSalle Street, Room 103, Chicago, Illinois. On that date, Pempek "appeared before a State Court Judge ... as required by his bail bond conditions, and demanded a trial." *Id.* at ¶ 4. The City was not ready, and the judge granted a continuance over Pempek's objection.

On October 5, 1983, Pempek received notice that Edgar had suspended his license under Ill.Rev.Stat. ch. 95½, § 6–306.1 (section 6–306.1). Edgar also suspended Sternberg's license under this provision.

Section 6–306.1 requires Edgar to suspend anyone's license when Edgar receives notice that the person has an outstanding warrant against him. The suspension occurs without a hearing. Section 6–306.1(a). The Secretary cannot reinstate the license until Edgar receives notice that the licensee has satisfied the warrant. *Id.* Before the Secretary suspends the license, however, he must also receive notice that the court clerk mailed the licensee notice of the warrant at his last known address sixty days before the suspension. *Id.* The Secretary must also know the licensee's full name, date of birth, sex, and driver's license number as well as the registration number of the motor vehicle registered to the alleged violator. *Id.*

Plaintiffs claim that these actions by Edgar and the City deprived them of due process under the fifth and fourteenth amendments to the United States Constitution and that the statute and the City's actions are a bill of attainder prohibited by article I of the Constitution. The complaint seeks injunctive and declaratory relief as well as attorneys' fees, costs, and the money "collected by the City of Chicago pursuant to the authority of Illinois." Amended Complaint at 5. Both the City and Edgar move to dismiss on various grounds.

### II. *Discussion*

On a motion to dismiss, the court must "take [the plaintiffs'] allegations to be true, and view them, together with reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff." *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The complaint, however, must "contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the

pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Sutliff, Inc. v. Donovan Companies*, 727 F.2d 648, 654 (7th Cir. 1984).

A. *Constitutionality of Ill.Rev.Stat. ch. 95½, § 6–306.1*

 Section 6–306.1 provides in relevant part:

Failure to pay fines for traffic and parking violations. (a) The Secretary of State, upon receipt of a form prescribed by him that there is a warrant outstanding in any one county in Illinois for the arrest of a violator for ten or more parking violations ... shall immediately suspend the drivers license of said violator without a hearing, and shall not remove such suspension, nor issue any license or permit to said violator until notified by the Clerk of the Court in said county that the violator has appeared and satisfied the outstanding warrant against him. (b) The form prescribed by the Secretary shall be certified by the Clerk of the Court and shall contain the following information:

(1) That the violator against whom the warrant is outstanding has been notified of said warrant by mailing it to his last known address at least 60 days prior to certification to the Secretary of State by the Clerk.

(2) The full name, date of birth, sex, and drivers license number of the violator, and in the case of parking violations the registration number of the motor vehicle registered to the violator.

Plaintiffs interpret this section to prohibit the Secretary from ever holding a hearing regarding a suspension. Edgar notes that after a suspension, a driver may apply under Ill.Rev.Stat. ch. 95½, ¶¶ 2–118(a) and 2–118(e) for an administrative hearing subject to judicial review.[1] Edgar's Memorandum Supporting Motion to Dismiss at 3.

In *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), the United States Supreme Court upheld a similar Illinois statute that gave the Secretary power to revoke a driver's license after three convictions for minor traffic offenses. The Secretary needed to hold no pre-suspension hearing. *Id.* at 107, 97 S.Ct. at 1724. The procedure encompassed written notification as well as a full evidentiary hearing within twenty days and " 'as early as practical' " after the licensee requested such a hearing. *Id.* at 109–10, 97 S.Ct. at 1726 (quoting ¶ 2–118(a)).

"[T]he Due Process Clause applies to the deprivation of a driver's license by the State." *Dixon*, 431 U.S. at 112, 97 S.Ct. at 1727. The Court therefore utilized the three part test of *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976), to determine when the licensee must receive a hearing.[2] To evaluate what

1. *See infra* note 2 and accompanying text.

2. The *Dixon* parties agreed that the licensee eventually received all the hearings to which he was entitled under ¶ 2–118(a) and (e). 431 U.S. at 112, 97 S.Ct. at 1727. The only question was one of timing. *Id.* Here, the plaintiffs contend that the statute precludes all hearings. Edgar admitted that the State would give a licensee a hearing under ¶ 2–118(a) if asked. Although the statute says the suspension will occur without a hearing, this provision does not preclude a ¶ 2–118(a) hearing to determine whether the Secretary complied with paragraph 6–306.1. The complaint lacks any indication that Pempek asked the Secretary for a hearing regarding the suspension.

Pempek argues that the Illinois Administrative Review Act (the Act) is inapplicable because the statute requires suspension of the license and the state agency, since it has no discretion regarding the suspension, issues no order as required by the Act. Paragraph 6–306.1 itself does not suspend the license; it requires the Secretary to suspend the license. Therefore, the suspension is an action by the Secretary reviewable under the Act.

The Secretary cannot lift the suspension until the warrant is satisfied. Satisfaction of the warrant means either that the licensee pays the fines after receiving an opportunity to be heard at a hearing regarding the warrant or the licensee is vindicated at such a hearing. If, however, the Secretary suspends the license without complying with paragraph 6–306.1, an administrative review hearing provides a mechanism for the Secretary to correct his mistake. Therefore, the licensee gets a hearing both on whether the licensee committed the offense charged in the

process was "due," the Court looked to " 'first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " 431 U.S. at 112–113, 97 S.Ct. at 1727 (quoting *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903).

The Court concluded that the interest in a driver's license "is not so great as to require [the Court] . . . 'to depart from the ordinary principle' . . . that something less than an evidentiary hearing is sufficient prior to adverse administrative action." 431 U.S. at 113, 97 S.Ct. at 1728 (quoting *Mathews,* 424 U.S. at 343, 96 S.Ct. at 907). The risk of an erroneous deprivation was "not great" since it followed three full judicial hearings. *Id.* The appellee never challenged the sufficiency of these hearings. *Id.* "Finally, the substantial public interest in administrative efficiency would be impeded by the availability of a predetermination hearing in every case." *Id.* 431 U.S. at 114, 97 S.Ct. at 1728. The licensees might use a hearing request to delay proceedings. *Id.* Therefore, a pre-suspension hearing was unnecessary. *Id.*

The Court reaffirmed *Dixon* in *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), which held that the Illinois law in *Dixon* was indistinguishable from the Massachusetts law requiring suspension for refusal to undergo a breathylzer examination for drunk driving. "Both cases involve[d] the constitutionality of a statutory scheme for administrative suspension of a driver's license for statutorily

defined cause without a pre-suspension hearing." *Id.* at 11, 99 S.Ct. at 2617.

This court finds that section 6–306.1 is similarly indistinguishable from the statutes in either *Dixon* or *Mackey.* The private interest is the same as in *Dixon* and *Mackey* and does not by itself necessitate a pre-suspension hearing. *See* 431 U.S. at 113, 97 S.Ct. at 1727. Paragraphs 6–306.1 and 2–118(a) provide numerous safeguards against erroneous deprivation both due to unfounded traffic citations and to clerical mistakes. The Secretary suspends the license only after an Illinois court issues a warrant because the licensee has at least ten outstanding parking tickets. The clerk of the issuing court must send notice of the warrant to the licensee at least sixty days before the Secretary receives any information. The forms used to notify the Secretary whose licenses should be suspended must contain detailed information about the licensee.

These safeguards operate in two ways. First, they ensure that the licensee gets many chances to challenge the underlying allegations of parking violations. Ten tickets and a warrant must issue at least sixty days before the Secretary even receives the information leading to suspension. The licensee has procedures to challenge both the tickets and the warrant. Second, before the deprivation, several different state agencies and many individuals review the licensee's file. At least ten tickets issue, a court swears out a warrant, and the Secretary gets notice of both. The different procedures provide several opportunities to identify mistakes and preclude individual biases.

The plaintiff argues that these protections are not enough because there is no guarantee that the licensee receives notice of the tickets and the warrant. This argument fails for two reasons. First, the Con-

---

warrant and on whether the Secretary conformed with paragraph 6–306.1.
With Edgar's representation, the allegations in the complaint, and the court's reading of the statute, the court need only consider whether the statute violates the Constitution because it precludes a pre-suspension hearing. *See gener-*

*ally Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 165, 71 S.Ct. 624, 645, 95 L.Ed. 817 (1951) (Justice Frankfurter concurring) ("[S]tatutes should be interpreted, if explicit language does not preclude, so as to observe due process in its basic meaning.") (citations omitted). The only issue is one of timing.

stitution provides only the right to an opportunity to be heard. *E.g., Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 171–72, 71 S.Ct. 624, 648–49, 95 L.Ed. 817 (1951) (Justice Frankfurter concurring). The court concludes that the many safeguards in the statute provide this opportunity. Second, even if the court assumed that the statute has an unconstitutional result when a licensee failed to receive notice of the tickets or the warrant, Pempek's complaint lacks any allegations that he was unaware of the pending tickets or the warrant. If he was aware of these charges against him, he lacks standing to raise the claim that the statute is unconstitutional because, in fact, it denies some licensees an opportunity to be heard.

The added value of a pre-suspension hearing before the Secretary is minimal. Given the procedures in the statute and sixty-day waiting period, the driver already has several chances to plead his case before suspension. Adding another notice and hearing procedure would only duplicate those provided in connection with the ten parking ticket violations and the warrant. If the driver learns of his suspension, the chances are great that he knew of the warrant since the court clerk and the Secretary direct their notices to the same address. Requiring the Secretary to repeat what the clerk did sixty days previously creates needless expense.

The State of Illinois (the State) has an interest in keeping drivers off the road who flout enforcement of local parking ordinances. Parking laws protect the smooth flow of traffic and allow a city to make maximum use of limited parking spaces. Those individuals who receive parking ticket after parking ticket without paying the resulting fines or challenging their validity show disrespect for parking laws. The State has an interest in responding to such disrespect. The State needs to retain some control over whom it licenses. Paragraph 6–306.1 requires the Secretary to suspend a license only when a driver refuses to respond to repeated charges that the driver interfered with the safety and efficiency of the roads.

These factors all support the constitutionality of paragraph 6–306.1. Plaintiffs claim that the issuance of a warrant does not mean that the licensee will get a pre-deprivation hearing because, before the hearing, the person "must surrender to the custody of police and post a bail bond equivalent to the cash fines of all outstanding tickets." Plaintiffs' Memorandum at 2. What plaintiffs misunderstand is that the suspension of the *license* is the deprivation at issue in this case. If licensees fail to receive notice of the warrant or the tickets before they are arrested, the constitutional problem, if any exists at all, is with the ticket and warrant procedure, not the suspension procedure.

Therefore, the court finds that paragraph 6–306.1 survives plaintiffs' constitutional challenge under the due process clause.

The charge that paragraph 6–306.1 is a bill of attainder poses novel questions. Article 1, section 10, of the United States Constitution states that "[n]o State shall pass any Bill of Attainder." "A bill of attainder is a legislative act which levies punishment against specified individuals or groups of individuals without a judicial trial." *E.g., Benboe v. Carroll,* 494 F.Supp. 462, 465 (W.D.Ky.1977), *aff'd,* 625 F.2d 737 (6th Cir.1980). This court has noted before that "[a] law of general applicability is not unconstitutional merely because its enactment was inspired by a specific example of the evil which it seeks to suppress." *Collin v. Smith,* 447 F.Supp. 676, 682 n. 4 (N.D.Ill.) (Judge Decker), *aff'd,* 578 F.2d 1197 (7th Cir.), *cert. denied,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978).

Pending before the United States Supreme Court is the case of *Selective Service System v. Minnesota Public Interest Research Group,* —— U.S. ——, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). In that case, the district court held that plaintiffs demonstrated a probability of success on the merits of their claim that section 1113 of the Department of Defense Authorization Act (the Act) is a bill of attainder. *Doe v.*

*Selective Service System,* 557 F.Supp. 937, 941–46 (D.Minn.1983). That portion of the Act requires male college students to certify they have registered for the draft before they qualify for federal financial aid. *Id.* The Supreme Court heard arguments on April 23, 1984.

This court feels that the Supreme Court's disposition of *Minnesota Public Interest Research Group* will clarify whether section 6–306.1 is a bill of attainder. *See* 52 U.S.L.W. 3813–14 (U.S. May 15, 1984). Therefore, the court will stay further proceedings on plaintiff's bill of attainder claims against Edgar until the Supreme Court acts on *Minnesota Public Interest Research Group.*

B. *Constitutionality of Chicago's Bail Bond Policy*

■ The complaint alleges that the City's bail bond policy violates the due process clause because the policy conflicts with Illinois law regarding bail. Paragraph 7 of the amended complaint states that "[u]nder Illinois Supreme Court Rule 528, the bail for ordinance violations shall be $50.00 and Illinois Supreme Court Rule 503(a) governing multiple charges specifically provides that bail shall be set at the amount required by only one offense, that offense requiring the most bail." Rule 503(a) applies only to those cases where "the bail is established for [the] . . . offense under Rule 526, 527, or 528." Ill.Sup.Ct.R. 503(a). Therefore, Pempek argues, his $400.00 bond was excessive.[3]

Pempek fails to explain that the following precedes the bail schedules that he discusses:

PART B. BAIL SCHEDULES

NOTE: The bail provisions of Rules 526, 527, and 528 do not apply to arrests on warrant. . . . When the accused is actually brought before a judge, the bail amounts specified in these rules do not control.

Ill.Rev.Stat. ch. 110A; *see also* Ill.Rev.Stat. ch. 38, 110–5 (establishing criteria for determining the amount of bail). The first paragraph of the complaint alleges that Pempek was arrested pursuant to a warrant. Therefore, Pempek's arguments about his bail being excessive under the due process clause are meritless.

■ The bill of attainder arguments are similarly meritless. Pempek asserts in his brief that the bail bond scheme is a mere sham because the bail notice merely refers the driver to a clerk who forces the driver to sign a guilty waiver and pay his delinquent tickets. The complaint, however, alleges that, in fact, Pempek appeared before a judge who continued the trial. The court refuses to incorporate Pempek's memorandum into his complaint that contains a completely different description of the procedure. A single continuance because the City was unprepared hardly violates the bill of attainder clause. The single continuance was not a legislative act and did not deprive Pempek of a trial.

The court dismisses the claims against the City.

III. *Conclusion*

For the reasons above, the court grants the City of Chicago's motion to dismiss and dismisses the claims against the City. In accordance with the above, the court stays further proceedings with respect to the claims against Edgar.

ON MOTION TO DISMISS

Raymond Pempek (Pempek) and Gary Sternberg (Sternberg) brought this section 1983 action against the City of Chicago (the City) and Jim Edgar, the Illinois Secretary of State (Edgar or the Secretary). Plaintiffs claim that Edgar violated their civil rights by revoking their driver's licenses under Ill.Rev.Stat. ch. 95½, ¶ 6–306.1 (1983). That statute requires the Secretary to revoke a person's license when Edgar

---

**3.** Although plaintiffs' brief denies it, the amended complaint lacks any allegation tying Sternberg to the City. Therefore, the court concludes that Sternberg raises no cause of action against the City.

receives notice that the person has ten or more unpaid parking tickets.

On June 6, 1984, the court concluded as a matter of law that the statute withstood a procedural due process challenge under the fourteenth amendment. To avoid repetition, the court incorporates the factual discussion in that opinion into this one. Decision was stayed, however, on whether the statute constituted a bill of attainder in violation of art. 1, § 10 of the United States Constitution. On July 5, 1984, the Supreme Court decided *Selective Service System v. Minnesota Public Interest Research Group*, —— U.S. ——, 104 S.Ct. 3348, 3358, 82 L.Ed.2d 632 (1984) [hereinafter *MPIR* ] and clarified what constitutes a bill of attainder. The parties briefed the applicability of that case to Pempek's complaint and defendants' motions to dismiss.

### I. *Discussion*

In *MPIR*, plaintiffs challenged section 1113 of the Department of Defense Authorization Act of 1983 which denied male college students federal financial aid if they failed to register for the draft. The district court found that the law constituted a bill of attainder. 104 S.Ct. at 3352. The Supreme Court disagreed. *Id.* at 3352–58. After reviewing the history of the bill of attainder clause, the Court listed "three necessary inquiries [to determine whether a statute is a bill of attainder]: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'" *Id.* at 3355–56.

The statute conformed with none of the three criteria that define a bill of attainder. 104 S.Ct. at 3356–58. First, section 1113 imposed no burden historically associated with punishment because it only denied "a non-contractural governmental benefit." *Id.* at 3356. In addition, the denial of the benefit was only temporary, and the stu-

dents could avoid the sanction by registering. *Id.* Second, Congress furthered the non-punitive goal of encouraging young men to register. *Id.* at 3356–57. Section 1113 was a rational means of achieving this goal. *Id.* at 3357. The provision also facilitated fair allocation of resources by limiting aid to students willing to discharge their responsibility as citizens. *Id.* Finally, Congress evinced no punitive intent. *Id.* Comments by Congressmen demonstrated a desire to regulate all non-registrants, including those who unintentionally neglected to register. *Id.*

■ As in *MPIR*, paragraph 6–306.1 possesses none of the three characteristics of a bill of attainder. First, Pempek and Sternberg have the power to avoid forfeiture of their licenses by "satisfying" the warrants. Ill.Rev.Stat. ch. 95½ ¶ 6–306.1. Satisfying the warrants means either paying the tickets or posting bond. The loss of the license is not a punitive or permanent confiscation that legislatures historically used to punish. *See* 104 S.Ct. at 3356. As with section 1113, the statute in this case punishes no one for getting too many tickets. It encourages individuals to pay their tickets and removes from the road individuals who, according to state records, have too many citations.

For similar reasons, the statute furthers non-punitive goals. As discussed in the court's first opinion, paragraph 6–306.1 allows the state to retain control over whom it licenses. Memorandum Opinion and Order of June 6, 1984 at 10. The law provides a way for the Secretary to react against disrespect for traffic laws and procedures. By providing this tool to the Secretary, the legislature ensures that only qualified drivers possess driver's licenses. Paragraph 6–306.1 also provides a rational incentive to aid the Secretary in tracing delinquent drivers and resolving pending traffic tickets.

Plaintiffs provide no persuasive argument that the drafters of paragraph 6–306.1 evinced a punitive intent. The legislature incorporated a simple means for the licensee to avoid the loss of his license:

satisfaction of the warrant. Had the legislature intended to punish ticket scofflaws, it would have precluded them from recovering their licenses. It would have confiscated licenses without a way to secure their return.

The *MPIR* analysis clarifies that paragraph 6–306.1 fails to qualify as a bill of attainder. Based on the allegations in the complaint, the court is unable to conclude that this statute, on its face, is a bill of attainder. Because this was the only claim remaining in the complaint, its dismissal ends the case.

## II. *Conclusion*

For the reasons above, the court grants the motion to dismiss. The case is dismissed.