[679 NYS2d 14]

Council of the City of New York et al., Respondents, v Rudolph Giuliani, as Mayor of the City of New York, et al., Appellants.

First Department, October 16, 1998

APPEARANCES OF COUNSEL

*Dale C. Christensen, Jr.,* of counsel (*John J. Galban* on the brief; *Seward & Kissel* and *Richard M. Weinberg,* attorneys), for respondents.

*Timothy J. O'Shaughnessy* of counsel (*Leonard Koerner, Jonathan Pines* and *Kristin M. Helmers* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellants.

*Laurel W. Eisner* and *Elisa Velazquez* for Mark Green, Public Advocate for the City of New York, *amicus curiae.*

*Charles N. Brown* and *Douglas H. Astralaga, Corporation Counsel,* for City of Utica, *amicus curiae.*

*Peter D. Moss, amicus curiae, pro se.*

## OPINION OF THE COURT

Per Curiam.

Over the past few months, Mayor Rudolph W. Giuliani

(henceforth the Mayor) has publicly supported the construction of a new baseball stadium for the New York Yankees in Manhattan. In April of this year, Peter F. Vallone (henceforth the Speaker), the Speaker of the Council of the City of New York (henceforth the Council), announced an intent to create a voter referendum that would block the Mayor's plan to relocate the Yankees. The proposal, Introductory No. 335 (referred to herein as Int. 335), which was designed to be placed on the ballot at the November 3, 1998 general election, would prohibit New York City officials from spending public funds on the construction of a new stadium for the Yankees in Manhattan.

Subsequently, the Mayor stated his intention to create a new Charter Revision Commission (henceforth the Commission) which would re-examine and possibly amend or replace the City Charter. The Council and the Mayor had put forward proposals for Charter Revision Commissions during the previous winter but had ultimately deferred consideration of the issue. The Mayor's decision to revive the Charter revision idea was admittedly motivated in part by a desire to outmaneuver the Council's referendum plan. Under Municipal Home Rule Law § 36 (5) (e), the placement on the ballot of a validly derived proposal initiated by a Charter Revision Commission will "bump" any other referendum off the ballot, so that the voters can give their full attention to the important task of reviewing the City Charter.

The Commission announced a broad agenda in June 1998, but this agenda was subsequently narrowed to a single topic. Originally, the Commission's stated plan was to consider changes to the Charter provisions relating to land use and economic development, procurement of goods and services, budget efficiency, campaign finance, nonpartisan elections for City officials, and a review of the functions of various City offices, as well as other unspecified issues. Suggested revisions, if any, would be presented to the voters in November.

However, the result of the Commission's first and second public hearings was a decision to defer consideration of all but three issues: campaign finance reform, nonpartisan elections, and a requirement of full-time rather than part-time service for City Council members. This decision was adopted at the Commission's first of five public meetings. After the second public meeting, the Commission further narrowed its agenda to focus solely on campaign finance reform, and accordingly conducted public hearings on this topic. At the end of its review

process in August, the Commission voted to approve its campaign finance proposals for submission to the voters of New York City in November.

The Commission also voted to continue studying the other issues for the 1999 general election. Although technically the Commission's term of office would expire, pursuant to Municipal Home Rule Law § 36 (6) (e), on the day of the election for which it submitted a proposal, the Mayor could reappoint the Commission if its work was not complete.

The instant lawsuit arose because the Council and the Speaker (collectively "plaintiffs") challenge the legitimacy of the process by which the proposals of the Charter Revision Commission were formulated. Municipal Home Rule Law § 36 (5) (a) mandates that the Commission "review the entire charter", and that if the Commission decides to leave any part of the charter unchanged, "it shall make a report to the public, accompanying its proposals, in which it shall refer specifically to such unchanged part and explain its decision to leave such part unchanged." It is plaintiffs' contention that the Commission neither undertook nor intended to undertake a complete review of the Charter; rather, plaintiffs claim, the Charter review was a charade whose sole purpose was to put *some* proposal (whatever it might be) on the ballot to displace Int. 335.

The IAS Court agreed and granted plaintiffs an injunction barring defendants from placing the Commission's campaign finance reform proposal on the ballot. Because we find that defendants complied with the requirement of complete review of the Charter, as defined by the Court of Appeals in *Matter of Cruz v Deierlein* (84 NY2d 890), we hold that plaintiffs were not entitled to a preliminary injunction. In light of this conclusion, we need not reach the parties' other arguments.

A movant's burden of proof on a motion for a preliminary injunction is particularly high. A preliminary injunction may be issued only where the moving party demonstrates a likelihood of success on the merits, the prospect of irreparable harm if the injunction is not granted, and a balance of equities in the moving party's favor (*State of New York v Fine*, 72 NY2d 967, 968-969). This standard was not met here.

Plaintiffs did not show a likelihood of success on the merits. The sole claim which the IAS Court upheld, namely, plaintiffs' challenge to the completeness of the Commission's review, is not valid. Our conclusion on this point is controlled by *Cruz* (*supra*), in which the Court of Appeals applied Municipal Home Rule Law § 36 (5) (a) to circumstances much like those pre-

sented herein. Just as in New York City today, the Mayor and City Council of Yonkers were engaged in a power struggle in which the Mayor appointed a Charter Revision Commission specifically to preempt the City Council's referendum proposal (which would have curtailed certain mayoral powers) from appearing on the ballot. The Yonkers Commission's report stated that it had examined the entire Charter and decided not to change the balance of the Charter because several topics needed significant further study. As a result, the Yonkers Commission only proposed two amendments to the existing Charter. Its report discussed the history and rationales for those provisions in detail (*supra,* at 892-893).

The Yonkers City Clerk refused to place the Yonkers Commission's proposals on the ballot, alleging that the Commission had not undertaken a complete review of the Charter. The Court of Appeals, however, found the Yonkers Commission's scope of review to be sufficient (*supra,* at 892).

The material facts of the instant case are similar to *Cruz* in many respects. First, in both cases, the Mayor appointed the Commission partly to curtail the City Council's power to place its referendum before the voters. This motivation was implicitly deemed legitimate by the Court of Appeals. Moreover, in *Di Prima v Wagner* (14 AD2d 36, 40, *affd* 10 NY2d 728), this Court upheld the predecessor of Municipal Home Rule Law § 36 (5) (e), even though that statute raised the real possibility that a politically motivated Mayor might instigate a Charter review out of a desire to block local legislation rather than solely out of a "pure" desire to revise the Charter.

The IAS Court herein wrongly second-guessed the Commission's assertion that it had conducted a thorough review. It is not a court's place to speculate how much the Commission's action was due to an alleged Mayoral desire to put something on the ballot at all costs, versus the Commission's professed sense that the urgent problem of campaign finance reform required an immediate response even though other Charter sections still remained to be explored. The latter is plausible because a different campaign finance proposal was pending before the City Council. The Commission's report here noted that immediate action was necessary since some candidates for municipal office had already begun fund raising for the 2001 elections. Similarly, in *Cruz (supra),* the Yonkers Commission focused its review on certain problems because the City Council's proposed Local Laws, if passed, would have codified a different solution to those problems.

Further, under *Cruz* it is legitimate for the Commission to present only a limited number of amendments and defer the remainder for further study in the hopes that the Commission will be reappointed to continue its work (*see, Matter of Cruz v Deierlein, supra,* at 893). It also appears that notwithstanding the seemingly strict language of Municipal Home Rule Law § 36 (5) (a), the Court of Appeals has concluded that a Commission need not enumerate every single section of the Charter in support of its decision to leave such sections unchanged.

The Commission's report herein, which was more than twice the length of the one in *Cruz,* enumerates various reasons for its conclusion, including: the fact that the Charter had already been extensively overhauled in 1989; concerns voiced at the public hearings that the Commission would need a long time to study many of the proposed issues; and the aforementioned need to implement a new campaign financing scheme in time for municipal candidates to come into compliance therewith. As in *Cruz,* the report discussed the history and reasoning behind the proposed amendments at length. Additionally, with respect to the other topics that the Commission had initially announced an intent to review, the report detailed the Commission's findings on each issue and buttressed the Commission's conclusion that these topics needed further study.

We also note that plaintiffs failed to demonstrate irreparable injury. Even if Int. 335 did not appear on the ballot, the Mayor could not unilaterally decree that public funds should be spent on a new stadium, absent the City Council's budgetary and land use powers.

Since we find that the Commission's campaign finance proposal was validly derived, pursuant to Municipal Home Rule Law § 36 (5) (e), it must take precedence over Int. 335, which will thus not appear on the ballot this November. Accordingly, we dismiss as academic defendants' cross motion for summary judgment declaring Int. 335 invalid as an illegal exercise of the City Council's powers.

Therefore, the order, Supreme Court, Bronx County (Douglas E. McKeon, J.), entered on or about October 6, 1998, granting plaintiffs' motion for a preliminary injunction and denying defendants' cross motion for summary judgment, should be reversed, on the law, without costs, the plaintiffs' motion denied, and the defendants' cross motion dismissed as academic.

Motion seeking leave to vacate the stay dismissed as moot and motions seeking permission to file *amicus curiae* briefs granted.

Rosenberger, J. P., Nardelli, Mazzarelli, Andrias and Saxe, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about October 6, 1998, reversed, on the law, without costs, plaintiffs' motion for a preliminary injunction denied and defendants' cross motion for summary judgment dismissed as academic. Motion seeking leave to vacate the stay dismissed as moot and motions seeking permission to file *amicus curiae* briefs granted.