(December 14, 2000)

■ In the Matter of NEW YORK APPLE TOURS, INC., Respondent, v JANE S. HOFFMAN, Appellant. In the Matter of NEW YORK APPLE TOURS, INC., Respondent, v RICHARD E. JACKSON, JR., Appellant. [717 NYS2d 569] —Order and judgment (one paper), Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered June 14, 2000, which, in this CPLR article 78 proceeding, treated petitioner New York Apple Tours, Inc.'s petition for a final judgment annulling an order temporarily suspending its license to operate sightseeing buses as a motion for a preliminary injunction, granted petitioner that relief and denied respondent Jackson's cross motion to dismiss the petition, unanimously reversed, on the law, without costs, the cross motion granted, and the petition dismissed.

Pursuant to an Amended Notice of Hearing dated March 31, 2000, the Department of Consumer Affairs (DCA) initiated an administrative proceeding to determine the fitness of New York Apple Tours, Inc. (Apple) to continue as a licensed sightseeing bus operator. The notice asserted that Apple had a long history of violating New York laws by operating unlicensed buses, violating consent judgments entered into with the DCA, operating an illegal bus maintenance and repair center, adding more than 300 square feet to one of its facilities without necessary building permits, and receiving more than 1,000 traffic violations since 1996. In seeking a hearing, the DCA further pointed to Apple's guilty plea to Federal charges—charges which alleged that Apple engaged in a fraudulent scheme to illegally import approximately 70 double-decker buses. The plea agreement required Apple to pay $800,000 in fines.

A hearing was commenced on April 25, and was continued on May 4, May 12, and May 19, at which point it was adjourned to May 25. In the interim, on May 22, an Apple bus struck and killed an elderly pedestrian at the corner of 45th Street and Ninth Avenue in Manhattan. After the accident, it became apparent that Apple permitted the driver to operate the bus notwithstanding that he did not have a license to operate a 70-passenger tour bus. This fatal accident, when coupled with Ap-

ple's history of violations, prompted DCA to move, on May 23, 2000, for an emergency suspension of Apple's sightseeing license.

On May 25, 2000, a hearing was commenced to determine the DCA's application for emergency relief. Among other things, witnesses for the DCA testified that Apple buses were involved in 131 accidents from January 1996 through December 1999, with 23 of the accidents resulting in physical injuries.

The testimony at the DCA hearing also indicated that Apple was guilty of numerous violations of article 19-A of the Vehicle and Traffic Law, which establishes standards for bus drivers and requires carriers, such as Apple, to notify the Bus Driver Certification Unit of the Department of Motor Vehicles (DMV) of newly hired drivers. In this regard, a DMV investigation of Apple's bus driver files showed that out of 61 files, only 17 were for drivers who were on the official DMV list. The investigation of Apple's files further revealed that eight of the files had no abstracts of the driver's pre-employment driving record; nine had no pre-employment medical examinations; five had no abstracts of license records at all; and, two had late abstracts. There were also 19 instances in which drivers had not been reported as required to the DMV within 10 days of being hired. Further, of the 80 active drivers that Apple listed with the DCA, only 24 had been listed with the DMV in accordance with article 19-A. Neither the driver involved in the fatal accident, nor another who had recently been ticketed for having a suspended license, were among those drivers listed with the DMV.

After three days of hearings, the Administrative Law Judge granted the DCA's motion to temporarily suspend Apple's license pending a full fitness hearing, finding that, because of Apple's history of sloppy record keeping, it could not be trusted to hire drivers who are properly licensed to operate tour buses. The Judge also determined that suspension was warranted because of Apple's admission of guilt to the Federal charges.

Contemporaneously with the DCA's ongoing temporary suspension hearing, the DMV's Bus Driver Certification Unit, through its continuing investigation, uncovered 624 violations of article 19-A. A DMV review of its records further indicated that only two years earlier Apple had paid significant fines for committing 263 other violations. In view of this, on May 30, 2000, the DMV temporarily suspended Apple's bus registrations pending a full hearing that was to commence on June 13, 2000.

Before that hearing took place, Apple instituted the instant

article 78 proceeding seeking a judgment annulling the temporary suspension orders issued by both the DCA and DMV. Supreme Court, treating Apple's petition as one seeking a preliminary injunction, granted the petition, and enjoined the temporary suspension of Apple's licenses. In so doing, the court found that the hearing held by the DCA violated Apple's right to due process because of the purported inadequacy of the notice of hearing and the alleged brevity of the hearing itself. As to the DMV, the court concluded that the temporary suspension was unlawful because the DMV "failed to give notice and a hearing without adequate justification." We conclude that Supreme Court erred.

Initially, as to the sufficiency and timeliness of the DCA's notice of hearing, we fail to perceive the deficiency identified by Supreme Court. "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled * * * proceedings so that reasonable opportunity to prepare will be afforded and it must 'set forth the alleged misconduct with particularity' " (*In re Gault*, 387 US 1, 33 [citation omitted]). Here, the notice provided by the DCA complied with these requirements.

Concerning the particularity of the alleged misconduct, the grounds for the DCA's application were evident from the affirmation in support of the motion for an emergency suspension. Specifically, the affirmation indicated that, in addition to the charges set forth in the Amended Notice of Hearing, the DCA would introduce evidence demonstrating that the driver involved in the fatal accident was not properly licensed, that it would submit proof of other accidents involving Apple's buses, and that it would also introduce evidence of other unlicensed or improperly licensed drivers. Hence, Apple's claim that it was not sufficiently apprised of the charges cannot be sustained.

As to the timing of the notice, Apple can hardly complain that it did not have a sufficient opportunity to prepare for the hearing. In this connection, not only was Apple provided with almost two days advance notice that the application for emergency relief would be presented, but the notice was given in the context of a license revocation hearing that was already in progress. To the extent that the scope of the hearing was expanded, the expanded hearing concerned matters with which Apple was familiar, namely, its own history of accidents and the licensure of its drivers.

We also fail to perceive any deficiency in the hearing itself. The hearing lasted three days (which included an intervening weekend) and Apple was provided with ample opportunity to

cross-examine witnesses and present evidence in opposition to the application. While Apple argues that the evidence before the agency did not warrant a temporary suspension, the agency's determination had a rational basis and was supported by substantial evidence (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176; *Matter of Pell v Board of Educ.*, 34 NY2d 222). The emergency suspension of Apple's license by the DCA was therefore proper.

Turning to the temporary suspension issued by the DMV, Apple does not contend that the DMV may not constitutionally suspend a license prior to conducting a hearing. Rather, it is merely claimed that the DMV's decision to do so in this case was constitutionally infirm because there was no substantial evidence that Apple was endangering the public. This argument is without merit.

As noted, the DMV's temporary suspension was prompted by Apple's status as a persistent offender that had committed hundreds of violations of article 19-A in the past, and now had committed hundreds more. The DMV also specifically pointed out that within the 10 days prior to its notice of suspension there was a fatal accident involving an improperly licensed Apple driver, and the ticketing of another Apple driver who was operating a bus with a suspended license. These facts directly called into question Apple's ability to safely operate its tour buses on City streets. Accordingly, considering the State's compelling interest in highway safety, and the DMV's scheduling of a prompt post-suspension hearing, Apple's right to due process was not violated (*cf., Mackey v Montrym*, 443 US 1; *Dixon v Love*, 431 US 105; *Pringle v Wolfe*, 88 NY2d 426, *cert denied* 519 US 1009).

Finally, we note our disagreement with Supreme Court's conclusion that Apple, after a full hearing, will in all likelihood only be exposed to a monetary penalty, not a revocation of its licenses. To a large extent it was for this reason Supreme Court held that a temporary suspension of Apple's licenses was unjustified. Contrary to the conclusion reached by Supreme Court, we conclude that Apple failed to meet its burden of demonstrating that it would only be exposed to a monetary penalty (*see, Council of City of N. Y. v Giuliani*, 248 AD2d 1, 4, *lv dismissed in part and denied in part* 92 NY2d 938). In reaching this conclusion, we stress that we make no determination as to whether, after a full hearing with a fully developed record, revocation, as opposed to a monetary penalty, is the appropriate sanction.

In sum, the temporary suspension of Apple's licenses was

the culmination of its guilty plea to Federal charges and hundreds of violations of State law—violations that implicated public safety. Under these circumstances, Supreme Court's grant of a preliminary injunction was in error.

We have reviewed Apple's remaining contentions in opposition to respondent's cross motion seeking dismissal of the petition, and find them to be without merit. Concur—Sullivan, P. J., Williams, Ellerin, Wallach and Friedman, JJ.