OPINION OF THE COURT
Doris Ling-Cohan, J.
*208 This is a case of less than “TLC” treatment by the TLC, the New York City Taxi and Limousine Commission. In this CPLR article 78 proceeding, petitioner taxi driver Sergiy Udodenko seeks to annul the determination of the respondent New York City Taxi and Limousine Commission assessing a penalty against him for driving with a license which had been suspended without his knowledge more than five months earlier, due to his failure to take a drug test — a test he claims he was never notified of. For the following reasons, the petition is granted and the determination of the respondent New York City Taxi and Limousine Commission is annulled.
Background
Petitioner is a licensed taxi driver who has brought this article 78 proceeding to challenge the determination of respondent TLC penalizing him, by fining him $350 and assessing two points on his license, for driving with a suspended license due to his failure to take a required drug test. Petitioner asserts that the TLC did not provide him with written notice of when he was required to take a drug test, nor did it notify him that his license had been suspended and provide him with a prompt opportunity to challenge that suspension, in violation of the Administrative Code of the City of New York, the rules and regulations of the TLC, and his constitutional right to procedural due process.
Until 1999, the TLC renewed the for-hire vehicle (FHV) licenses of taxi drivers on an annual basis. In order to renew a FHV license, a taxi driver is required to take an annual drug test. Beginning in 1999, the TLC began to renew taxi drivers’ licenses biennially, for a two-year term. The applicable regulations, however, continued to require taxi drivers to take an annual drug test (see 35 RCNY 6-16 [v]). Petitioner renewed his FHV license in 1999 and 2001. He was due to take a drug test on or before October 21, 2002. Petitioner asserts that he was not notified of the date that he was required to take a drug test. The TLC, however, alleges that it hired a contractor to notify taxi drivers of the dates for their drug tests during the years when their licenses were not up for renewal and that petitioner was among the drivers provided with such a written notice. As a result of his failure to take the required drug test, petitioner’s FHV license was suspended on January 31, 2003. Petitioner did not, however, receive any written notice of this suspension.
Petitioner first learned that his license had been suspended on July 3, 2003, when a TLC inspector stopped him for a rou *209 tine inspection at LaGuardia Airport and issued him a summons for driving with a suspended license and violating the drug test requirement. On August 20, 2003, petitioner, represented by counsel, appeared at a hearing before the TLC to challenge the suspension of his license. He testified that after receiving the summons, he took and passed the drug test and his license was reinstated after several days. The Administrative Law Judge (ALJ), however, found petitioner guilty of operating a taxicab with a suspended license and penalized him by fining him $350 and charging him two points on his license.
Petitioner appealed the decision of the ALJ. In a decision dated September 11, 2003, the Chief ALJ concurred with the ALJ’s decision to impose a penalty on petitioner, stating that there was no requirement that the TLC notify drivers of the drug testing requirement, as they are charged with knowledge of the TLC’s rules. Petitioner then brought the instant proceeding to challenge the determination of the TLC and the penalties imposed.
Discussion
Although the determination to penalize petitioner was made after an evidentiary hearing, at issue in this proceeding is “whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion ...” (CPLR 7803 [3]). Accordingly, these issues may be decided by this court (CPLR 7804 [g]).
1. Violations of Administrative Code of the City of New York and TLC Rules
Petitioner asserts that the penalty assessed against him by the TLC violates the applicable provisions of the Administrative Code of the City of New York and the Rules of the New York City Taxi and Limousine Commission. Specifically, petitioner alleges that the TLC rule requiring drivers of for-hire vehicles to take a drug test “annually, within thirty (30) days of the anniversary of the issuance of either a new or renewal license” does not prescribe the penalty of suspension of the FHV license for failing to comply with this requirement (Rules of City of NY Taxi & Limousine Commn [35 RCNY] § 6-16 [v]). However, the Administrative Code provisions, which regulate the TLC, specifically provide that “[t]he commission may, after a hearing, suspend or revoke any driver’s license for failure to comply with any provision of this chapter applicable to licensed drivers or for failure to comply with the commission’s rules and regula *210 tions” (Administrative Code § 19-505 [1] [emphasis supplied]). As explained further below, the gravamen of the TLC’s error in the instant matter was not the penalty it imposed, but rather its failure to notify petitioner that it was suspending his license due to his failure to take a drug test and its failure to afford him a hearing prior to the suspension, in accordance with the applicable statutory and regulatory provisions (see Padberg v McGrath-McKechnie, 203 F Supp 2d 261, 269 [ED NY 2002], affd 60 Fed Appx 861 [2d Cir 2003], cert denied 540 US 967 [2003]).
2. The TLC’s Change in Policy Regarding Drug Testing During Years Between Biennial License Renewal Years Violates the New York City Administrative Procedure Act
It was relatively recently that the TLC implemented biennial, instead of annual, license renewal requirements. Petitioner asserts that the TLC’s policy of requiring drivers to take drug tests during the year in between the years designated for their biennial license renewals was a change in policy which should be subject to the formal rule-making procedures in the City Administrative Procedure Act (CAPA) (NY City Charter §§ 1041-1046).[1] According to petitioner, the TLC made a change in policy when it: (1) imposed a suspension against a licensee for failing to comply with the drug test requirement in the Rules of the New York City Taxi and Limousine Commission (35 RCNY) § 6-16 (v), and (2) required drivers to take drug tests during the year in between their designated biennial license renewal years.
As discussed above, the TLC is empowered to suspend a driver’s license for failing to take a drug test after complying with the required procedures; specifically, providing the driver with a presuspension hearing. However, the TLC failed to comply with CAPA’s rule-making provisions when it made the major policy change of requiring drivers to take drug tests during the year in between their designated biennial license renewal years.
CAPA defines the term “rule” as:
“the whole or part of any statement or communication of general applicability that (i) implements or applies law or policy . . . including an amendment ... of any such statement or communication . . . “a. ‘Rule’ shall include . . . any statement or com *211 munication which prescribes (i) standards which, if violated, may result in a sanction or penalty.” (NY City Charter § 1041 [5].)
TLC Rules (35 RCNY) § 6-16 (v) requires a licensed taxi driver to take a drug test “annually, within thirty (30) days of the anniversary of the issuance of either a new or renewal license.” After the TLC instituted biennial, instead of annual, license renewal requirements for taxi drivers in 1999, drivers may have legitimately been confused as to whether and when they were required to take drug tests in the year between their license renewal years. The TLC’s unwritten policy of requiring drivers to undergo drug tests on or before the month of their license renewal in the year between their designated biennial renewal years amounted to a policy change; such change materially affected the rights of all licensed taxi drivers equally and without exception, and effectively amounted to the adoption of a “rule,” within the meaning of CAPA (see Matter of Miah v Taxi & Limousine Commn. of City of N.Y., 306 AD2d 203 [1st Dept 2003]; Matter of Singh v Taxi & Limousine Commn. of City of N.Y, 282 AD2d 368 [1st Dept 2001], lv denied 96 NY2d 720 [2001]; see also Matter of Cordero v Corbisiero, 80 NY2d 771, 773 [1992]). Accordingly, the TLC was required to follow the rule-making procedures in CAPA, before making a major policy change applying to all licensed taxi drivers.
Moreover, in view of the fact that petitioner has contested whether the TLC provided him with written notice of when he was due for a drug test, the TLC rules should provide for procedures for notifying drivers of the dates by which they are required to take drug tests during the year in between their biennial license renewal years.[2] The replica of the notice allegedly mailed to petitioner by respondents’ private contractor is less than clear, particularly if English is not the reader’s native language.[3]
*212 Further, inasmuch as TLC’s policy change was not adopted in accordance with the rule-making procedures of CAPA, the suspension of petitioner’s license and the penalties imposed upon him by TLC pursuant to that policy were arbitrary and capricious (see Matter of Miah v Taxi & Limousine Commn. of City of N.Y., 306 AD2d at 203).
3. Procedural Due Process
Lastly, petitioner asserts that the failure of the TLC to notify him that his license had been suspended in January 2003 violated the constitutional standards for procedural due process. For the reasons discussed below, petitioner’s contention has merit.
In Mathews v Eldridge (424 US 319, 335 [1976]), the United States Supreme Court observed that the requirements for procedural due process are determined by analyzing the following factors: (1) the private interest that will be affected by official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and (3) the government’s interest, including the fiscal and administrative burdens, that the additional procedural safeguards would entail.
In the context of this matter, petitioner’s interest in his FHV license substantially affects his livelihood as a taxicab driver and, thus, it constitutes a property interest within the purview of the due process clause (see Padberg v McGrath-McKechnie, 203 F Supp 2d at 277). The risk of the erroneous deprivation of such a property interest is substantial, unless petitioner is afforded a presuspension or an immediate postsuspension hearing, at which he can present evidence to challenge the suspension of his FHV license. In analogous cases, the Supreme Court has concluded that notice and an immediate postsuspension hearing satisfy the requirements of procedural due process (see Mackey v Montrym, 443 US 1, 13-17 [1979]; Dixon v Love, 431 US 105, 113 [1977]; see also Barry v Barchi, 443 US 55, 65-67 [1979]).
There is no doubt that there is a strong governmental interest in promoting the safety of members of the public who use taxicabs (see Mackey v Montrym, 443 US at 18-19; Dixon v Love, 431 US at 114-115; Matter of New York Apple Tours v Hoffman, 278 AD2d 70, 73 [1st Dept 2000], appeal dismissed and lv denied *213 96 NY2d 729 [2001]; compare Padberg v McGrath-McKechnie, 203 F Supp 2d at 281 [presuspension, evidentiary hearing is required before taxi driver’s license could be suspended due to racially-motivated service refusals, as such refusals do not present an immediate threat to public safety, unlike the infractions involved in Mackey and Dixon]). Ironically, however, the TLC’s failure to notify petitioner that his license was suspended in January 2003, thereby permitting petitioner to drive with a suspended license and without a drug test for six months as he was in the dark (having received no notice), harmed the interests of both petitioner and the public. It appears that, in practice, the suspension remains a secret, known only to the TLC, until either the taxicab driver renews his license or is stopped by a TLC enforcement agent. Suspending the licenses of taxi drivers without notice cannot be in the best interests of public safety, when only the TLC knows of the suspension.
The TLC’s failure to provide petitioner with written notice that his FHV license had been suspended and its failure to provide petitioner with a presuspension or immediate postsuspension hearing to present evidence to contest the suspension, violated the requirements of procedural due process (compare Matter of New York Apple Tours v Hoffman, 278 AD2d at 73 [prompt postsuspension hearing allowing tour bus operator to contest the suspension of its license satisfied procedural due process]).
Therefore, for the reasons discussed herein, the TLC’s determination was made in violation of lawful procedure, affected by errors of law, violated the requirements of procedural due process, and was arbitrary and capricious {see CPLR 7803 [3]).
Accordingly, it is ordered and adjudged that the petition is granted and the determination of the respondent New York City Taxi and Limousine Commission imposing a penalty upon petitioner for driving with a suspended license is annulled.

. For example, New York City Charter § 1043 (d) provides that, before a city agency can adopt a new rule, it must hold public hearings on the proposed change.

. TLC does not submit an affidavit from the private contractor it allegedly used to mail out such notices by bulk mail, indicating that this notice was in fact sent to petitioner, or even indicating that any notices were mailed out by this company.

. Rather than providing the information in plain English, the notice is quite confusing even for someone schooled in English. For example, the date October 21, 2002 is written on such notice as “20021021.” The reader is referred to look for this “date” (20021021) and compute the period during which he is permitted to take such test by the confusing statement: “You should be tested at least thirty (30) days before the date that marks the first year of your current license (indicated in the upper left hand of this letter), *212 and you will not be permitted to take the test more than sixty (60) days before that date.” (Replica notice attached to exhibit B of answer.)