OPINION OF THE COURT
Mark C. Dillon, J.
On September 23, 2004, the parties and their counsels settled certain postjudgment issues that had been pending in this prolonged and acrimonious matter. The parties, since obtaining a divorce from this court on July 27, 2000 (Scancarelli, J.), had been actively litigating issues involving custody and the sale of the former marital residence. These issues were once again before this court as a result of decisions and orders from the Appellate Division, Second Department, dated December 2, 2002 and September 22, 2003 (308 AD2d 524 [2003]). The substance of those decisions and orders was discussed by this court in its decision and order dated June 28, 2004. To the extent relevant, the June 28 decision and order is incorporated herein by reference.
On September 23, 2004, the plaintiff, Jemiliya Pudalov, appeared before this court with newly-retained counsel. Prior thereto, she had been represented by the law firms of Jay Goldberg, P.C. and Cohen Hennessey & Bienstock P.C. (hereinafter referred to as either the Cohen firm or the movant) as evidenced by a retainer agreement executed by the plaintiff on December 10, 2003. Contemporaneously with the execution of the retainer agreement, the plaintiffs father, Jacov Bliumis, signed a guarantor agreement. The Cohen firm, as outgoing counsel, also attended the September 23, 2004 appearance, but sat in the rear of the courtroom. The court was advised by incoming counsel that a consent to change attorney form had been circulated but not yet filed with the court. The court proceeded upon that representation.
During the course of the September 23 appearance, the court learned that a fee dispute existed between the plaintiff and the Cohen firm, and that they would be proceeding to mandatory arbitration pursuant to the retainer agreement. The Cohen firm alleges that the plaintiff owes $208,664.38 in unpaid fees as of September 23, 2004.
On October 8, 2004, this court signed an order to show cause filed by the Cohen firm seeking restraints against the plaintiff and her father from disposing, transferring, or encumbering assets and accounts, including the former marital residence, pending the arbitration determination and its confirmation. The *560 plaintiff opposes the application. The defendant’s counsel as well as the other attorneys of record in this case were served with this application, but have not submitted any responses to it.
CPLR 7502 allows a court to entertain applications arising out of an arbitrable controversy. As to provisional remedies, the statute contains specific venue rules. (See, CPLR 7502 [c].) Section 7502 (c) provides, in pertinent part, that the
“supreme court in the county in which an arbitration is pending, or, if not yet commenced, in a county specified in subdivision (a), may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief. The provisions of articles 62 and 63 of this chapter shall apply to the application . . . .”
Here, it is undisputed that the plaintiff agreed in the retainer agreement to mandatory arbitration in New York County in the event of a fee dispute. It is also undisputed that the Cohen firm commenced an arbitration proceeding on September 24, 2004. Thus, this application could have been brought in New York County. Contrary to the plaintiffs interpretation, however, section 7502 does not preclude the application from being brought in Westchester County. Indeed, section 7502 (a) (i) provides that in any proceedings other than to stay or bar arbitration, an application may be brought in the county where at least one of the parties resides. Since the plaintiff resides in Westchester County, it was proper for this application to be brought in this court.
Turning to the merits of the application, the court finds that the movant is entitled to limited provisional relief. Pursuant to section 7502 (c), before a court may grant an order of attachment or a preliminary injunction, it must determine whether or not any arbitration award to which the movant may be entitled would be “rendered ineffectual without such provisional relief.” In this regard, the court must consider CPLR article 62 (attachment) and article 63 (preliminary injunction).* As the movant specifically requests injunctive relief pending mandatory *561 arbitration, the court must focus its attention on whether or not the movant is entitled to a preliminary injunction under article 63.
On a motion for a preliminary injunction, a movant must satisfy three criteria: (1) the likelihood of ultimate success on the merits, (2) irreparable injury in the absence of a preliminary injunction, and (3) a balancing of the equities in its favor. (See Evans-Freke v Showcase Contr. Corp., 3 AD3d 549 [2d Dept 2004].) The determination whether or not to issue a preliminary injunction is a matter left to the sound discretion of the court. (See, Doe v Axelrod, 73 NY2d 748 [1988].)
A careful review of all the papers submitted and arguments presented warrants a finding that the movant has shown an entitlement to a preliminary injunction against the plaintiff, albeit one much more limited than the full provisional relief requested in the order to show cause.
Regarding the first prong of the inquiry, a movant must establish a clear right to the relief in order to demonstrate a likelihood of success on the merits. (See, Suffolk County Assn, of Mun. Empls. v County of Suffolk, 163 AD2d 469 [2d Dept 1990].) While the court does not purport to pass upon the merits of the fee dispute, it must acknowledge, nonetheless, the extensive history of this matter including appellate practice. The court also acknowledges the right of attorneys to be paid for the services they perform. It cannot be denied that the Cohen firm, in its postjudgment representation of the plaintiff, performed a significant portion of the process that secured for the plaintiff almost $1,000,000 in restitution from the defendant. Whether or not the movant’s services were worth the amount they now seek, or a lesser amount, is the question to be determined by the arbitrator. In any event, it appears to this court that the movant has established a likelihood of success on the merits as to some amount of attorneys’ fees.
Regarding the second prong of the preliminary injunction inquiry, the plaintiff argues in opposition that the Cohen firm cannot show the existence of any irreparable injury in the absence of a preliminary injunction. However, the movant’s *562 burden is to show only the prospect or potential for irreparable harm. (See, Council of City of N.Y. v Giuliani, 248 AD2d 1, 3 [1st Dept 1998].) While it may be true that the movant could ultimately secure its fees from the plaintiff even if this court did not issue a preliminary injunction, such a belief is speculative and a bit naive considering the tortured history of the underlying action. In particular, the court notes the high level of animosity that has permeated almost every aspect of this matter and the machinations engaged in by both parties at one time or another, most recently noted by this court on September 23, 2004. While the court would like to believe that the plaintiff will readily pay the Cohen firm whatever amount it is deemed to be entitled, the history of the case belies such an optimistic view and supports the conclusion that the movant will suffer irreparable harm if a preliminary injunction is not granted.
For the same reasons, the court finds that the equitable scales also tip in favor of the movant. The issuance of a preliminary injunction is also supported by the fact that the plaintiff, with her extensive resources and/or the ability to access them, will suffer no great hardship by a limited preliminary injunction. (See, Mr. Natural v Unadulterated Food Prods., 152 AD2d 729 [2d Dept 1989].)
Regarding Bliumis, the court finds that the Cohen firm has failed to establish its entitlement to a preliminary injunction against him. While Bliumis is required, under both the guarantor agreement and the plaintiffs retainer agreement, to submit to mandatory arbitration, it does not appear that the movant ever provided him with periodic invoices which it was required to do under the guarantor agreement. On this basis, the court concludes that the Cohen firm has not satisfied all three preliminary injunction elements as against Bliumis. Moreover, since the provisional remedies to be imposed upon the plaintiff shall secure the value of the fee dispute, there shall be no need or reason to expect that the guarantee provisions of the retainer agreement shall be implicated.
On the basis of the foregoing, it is hereby ordered that the order to show cause dated October 8, 2004 is granted to the extent that a preliminary injunction against the plaintiff is issued as follows: the plaintiff shall, within 10 days from the entry of this decision and order, transfer the sum of $208,664.38 to her new attorney, Donna E. Abrams, Esq. of the firm of Harold, Salant, Strassfield & Spielberg, to be immediately deposited by Ms. Abrams as escrowee in an interest-bearing escrow account. *563 Upon the issuance of an arbitration award and court confirmation of same, the Cohen firm shall transmit copies to Ms. Abrams who shall then forthwith release from escrow the required monies to the Cohen firm. If the award is less than the sum requested by the Cohen firm, Ms. Abrams shall release from escrow the required amount to the Cohen firm and return any remaining balance plus interest to the plaintiff; and it is further ordered that the prong of the order to show cause seeking the issuance of a preliminary injunction against Jacov Bliumis is denied; and it is further ordered that the interim relief granted by this court in the order to show cause dated October 8, 2004 is vacated as a result of this decision and order.

 Article 62, specifically section 6201, excludes matrimonial actions from the issuance of orders of attachment and is otherwise inapplicable here, due to the fact that movant does not seek an order of attachment and the provisions of article 62 regarding its availability against nondomiciliary defendants and *561 others are inapplicable here. Parenthetically, at least one court has granted an order of attachment in a postjudgment matrimonial application. (See, Glotzer v Glotzer, 111 Misc 2d 171 [Sup Ct, NY County 1981].) Such remedy, however, is generally considered harsh, and the statute is strictly construed in favor of those against whom it may be applied. (See, Glazer & Gottlieb v Nachman, 234 AD2d 105 [1st Dept 1996].)